**SIMON GREENSTONE PANATIER, PC**
Leah C. Kagan, Esq.
5 Penn Plaza, Suite 2308
New York, New York | 10001
Email: LKagan@sgptrial.com
212-634-1690
(214) 276-7699
Attorneys for Plaintiffs

**SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.**
Arnold C. Lakind, Esq.
Robert E. Lytle, Esq.
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
Email:  ALakind@szaferman.com
            RLytle@szaferman.com
Telephone: (609) 275-0400
Fax: (609) 275-4511

**In Re:**
**Imerys Talc America, Inc.**

**APRIL DEJESUS** and **EDWIN DEJESUS,**

Plaintiffs,

v.

**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);

**COTY, INC.** and its subsidiary NOXELL CORPORATION, for its CoverGirl brand of products;

Case No. 19-01403-KCF

Lead Case No:  19-10289-LSS

Chapter 11

Hearing Date:  June 18, 2019

Judge:  Hon. Kathryn C. Ferguson, Chief Judge

**BRIEF IN SUPPORT OF MOTION TO REMAND**

**Oral Argument Requested**

**CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);

**IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS COMPANY and WINDSOR MINERALS, INC. and METROPOLITAN TALC CO. INC.);

**JOHNSON & JOHNSON;**

**JOHNSON & JOHNSON CONSUMER INC.,** a subsidiary of JOHNSON & JOHNSON;

**NEW RUE21 LLC;**

**NOXELL CORPORATION** f/k/a NOXZEMA CHEMICAL COMPANY, for its CoverGirl brand of products, a subsidiary of COTY INC.;

**THE PROCTER & GAMBLE COMPANY** (sued individually and as successor-in-interest to NOXZEMA CHEMICAL COMPANY and its CoverGirl brand of products);

**RUE21, INC.;**

**WHITTAKER CLARK & DANIELS, INC.;**

**JOHN DOE CORPORATIONS 1-50** (fictitious);

**ENCHANTE ACCESSORIES INC.,**
                              Defendants.

2979459.1

Arnold Lakind
*alakind@szaferman.com*
Robert Lytle
*rlytle@szaferman.com*
SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400

Leah Kagan
*lkagan@sgptrial.com*
SIMON GREENSTONE PANATIER, P.C.
5 Penn Plaza, Suite 2308
New York, New York | 10001
212-634-1690
Attorneys for Plaintiffs

2979459.1

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND ...........................................................................................................3

III. ARGUMENT ...............................................................................................................4

    A. This Court Has A Primary and Independent Duty To Determine Whether Removal Is Valid. ...................................................................................................................................4

    B. J&J's Removal is Untimely. ...............................................................................................5

    C. This Court Lacks Subject Matter Jurisdiction. ..................................................................6

    D. Even if Subject Matter Jurisdiction Were Present, Abstention Requiring Remand Would Be Proper. ...........................................................................................................................14

        1. Background on Abstention. ...........................................................................................14

        2. Core Proceeding and Non-Core Proceeding Defined. ....................................................16

        3. Abstention Is Mandatory and Remand Is Appropriate. ..................................................16

    E. Even If Mandatory Abstention Did Not Apply To This Case, the Factors Supporting Permissive Abstention Warrant Remand to State Court. ......................................................19

IV. CONCLUSION ...........................................................................................................25

**Cases**

*A.H. Robins Co., Inc. v. Piccinin,*
    788 F.2d 994 (4th Cir. 1986) ............................................................................13

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997)...................................8, 21

*Ashland Inc. v. G-I Holdings Inc. (In re G-I Holdings, Inc.),*
    564 B.R. 217 (Bankr. D.N.J. 2016) ..............................................................19, 20, 23

*Balcor/Morristown Ltd. P 'ship v. Vector Whippany Assocs.,*
    181 B.R. 781 (D.N.J. 1995) ............................................................................19

*Borg-Warner v. Flores,*
    232 S.W.3d 765 (Tex. 2007)) ............................................................................21

*Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher,*
    *Salmond, Ronan & Rainone, P.A.),* 194 B.R. 750 (D.N.J. 1996) ...............................20

*Celotex Corp. v. Edwards,*
    514 U.S. 300, 115 S. Ct. 1493 (1995)..............................................................6

*Georgine v. Amchem Products, Inc.,*
    83 F.3d 610 (3d Cir. 1996)............................................................................8, 21

*G-I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings, Inc.,* Civil Action No. 17-0077,
    2017 U.S. Dist. LEXIS 68891 (D.N.J. May 5, 2017) ...............................................19

*Hall v. Welch Foods, Inc.,*
    2017 U.S. Dist. LEXIS 165022 (D. N.J. October 4, 2017).........................................4

*In re Asbestos Litig.,*
    2002 U.S. Dist. LEXIS 3083, at *6 (D. Or. February 1, 2002) ....................................4

*In re Combustion Eng'g, Inc.,*
    391 F.3d 190 (3d Cir. 2004)........................................................................8, 12, 13

*In re Dow Corning Corp. (Dow I),*
    86 F.3d 482 (6th Cir. 1996) ............................................................................12

*In re Exide Techs.,*
    544 F.3d 196 (3d Cir. 2008)........................................................................13, 16

*In re Federal-Mogul Global, Inc.,*
    300 F.3d 368 (3d Cir. 2002)........................................................................6, 7

*In re W.R. Garce & Co.,*
    412 B.R. 657 (D. Del. 2009) ....................................................................................5

*Jazz Photo Corp. ex rel. Moore v. Dreier LLP,*
    2005 U.S. Dist. LEXIS 36396, 2005 WL 3542468 (D.N.J. 2005) ...........................19

*Kurak v. A.P. Green Refractories, Inc.,*
    298 N.J. Super. 304 (App Div.), *certif. denied,* 152 N.J. 10 (1997) ........................21

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984).....................................................................................6

*Royal Indem. Co. v. Admiral Ins. Co.,*
    2007 U.S. Dist. LEXIS 85991 (D. N.J. November 19, 2007).....................................4

*Stoe v. Flaherty,*
    436 F.3d 209 (3d Cir. 2006)....................................................................................16

*Things Remembered, Inc. v. Petrarca,*
    516 U.S. 124 (1995)..................................................................................................6

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.),*
    591 F.3d 164 (3d Cir. 2009).................................................................................7, 9

**Statutes**
11 U.S. Code § 362.......................................................................................................3

28 U.S.C. § 1334 ................................................................................................2, 9, 15

28 U.S.C. §1452 ...........................................................................................................2, 20

Plaintiffs, by and through the undersigned counsel, pursuant to 28 U.S.C. §1452 and §1447(c), hereby file this Motion for Remand. In support thereof, Plaintiffs submit the following Memorandum of Law, along with the Certification of Leah Kagan (hereafter "Kagan Cert.") and exhibits filed herewith.

## I.    INTRODUCTION

Plaintiff April DeJesus is suffering from malignant mesothelioma—a fatal cancer caused by her exposure to asbestos in the talc used in J&J's Baby Powder.[1] Despite invasive surgeries and other treatments, Mrs. DeJesus's prognosis is poor.[2] Due to Mrs. DeJesus's diagnosis, any delay in their case poses a substantial risk that she will not be available to participate in her trial, which is currently set for April 20, 2020.[3]

In an effort to derail Plaintiffs' trial-set case, Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively "J&J") have improperly removed this state court products liability action based on an alleged tenuous connection to a Chapter 11 bankruptcy petition filed by one of J&J's talc suppliers, Imerys Talc America, Inc. ("Imerys" or "Debtor"). Pursuant to 28 U.S.C. § 1452 and § 1447(c), immediate remand is warranted.

***First***, J&J's removal of this trial-set case is untimely. Bankruptcy-related cases are not excluded from the 30-day requirement set forth in § 1446. J&J removed the case over sixty days after receiving notice of Imerys' bankruptcy filing, and after it has continued to participate in litigating this case in state court. As a result, J&J waived its right of removal, and the case should be remanded.

---

[1] Kagan Cert., ¶2.
[2] *Id.*
[3] Kagan Cert., ¶2.

***Second***, this Court lacks subject-matter jurisdiction. Plaintiffs' claims are not "related to" the pending bankruptcy proceeding filed by the Imerys debtors because the claims that J&J points to as a basis for federal jurisdiction are separate and distinct from Plaintiffs' personal injury claims against J&J. Plaintiffs' personal injury claims have no bearing over theoretical contract disputes J&J may have with the Imerys debtors. Its attempt to gloss over this distinction is fatal to its jurisdictional argument under 28 U.S.C. §1334(b) and *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368 (3d Cir. 2002).

***Third***, even if the Court has "related to" jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) requires remand, as Plaintiffs' claims: (1) do not arise under the bankruptcy code; (2) are exclusively based on state law; (3) are not subject to federal jurisdiction absent their purported relation to Imerys' bankruptcy; and (4) can be timely adjudicated in state court at the trial.

***Finally***, equitable remand under 28 U.S.C. §1452(b) and permissive abstention under 28 U.S.C. §1334(c)—employing essentially the same analysis—are appropriate. The relevant factors, which are nearly identical for the two sections, weigh heavily in favor of remand: Plaintiffs' claims arise exclusively under New Jersey law;[4] the trial court has extensive, specialized experience in trials regarding claims involving asbestos and cosmetic talcum powder;[5] and motion practice, discovery, and the retention of experts has been undertaken in preparation for a trial governed by the procedures of the New Jersey Asbestos Multi-County Litigation Court. *Id.* As such, relevant factors under §1452(b) and § 1334(c) weigh in favor of mandatory abstention and equitable remand. Plaintiffs request this Court to immediately remand so that trial may commence as scheduled.

---

[4] Kagan Cert., ¶¶ 3, 7, 8.
[5] Kagan Cert., ¶¶ 4-5.

## II.  BACKGROUND

Plaintiffs' Complaint in the underlying action was filed on October 16, 2018. The Complaint alleges that J&J sold talcum powder products containing asbestos and that Mrs. DeJesus' regular use of and exposure to Johnson's Baby Powder caused her to develop an asbestos cancer—mesothelioma.[6]

On February 13, 2019, Imerys filed a petition for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware.[7]

On April 18, 2019, J&J filed a motion to "fix venue" in the United States District Court for the District of Delaware. ECF Nos. 1-3 through 1-7, J&J's Removal Notice, Exhibit C. On April 30, J&J Filed an Emergency Motion to Transfer and a Motion for Ex Parte Relief seeking the transfer of approximately 2,400 cases to the District of Delaware.[8] On May 9, 2019, Judge Noreika denied both motions.[9]

Despite its attempts to demonstrate that Plaintiffs' personal injury claims against it are "related to" Imerys' bankruptcy, J&J remains solely liable for its own misconduct and, in any case, would need to file a subsequent proceeding to determine any right to contribution or indemnity from the Imerys debtors and the validity of any purportedly shared insurance. The remaining connections J&J identifies to Imerys relate solely to claims *against* the Imerys debtors, which are stayed pursuant to the automatic bankruptcy stay under 11 U.S. Code § 362 and independent from Plaintiffs' claims against J&J.

---

[6] Kagan Cert., ¶ 6.
[7] Kagan Cert., ¶ 8.
[8] Kagan Cert., ¶ 9.
[9] Kagan Cert., ¶ 9.

### III.   ARGUMENT

### A.   THIS COURT HAS A PRIMARY AND INDEPENDENT DUTY TO DETERMINE WHETHER REMOVAL IS VALID.

J&J asks this Court to wait for a Delaware District Court to decide whether it will fix venue before this Court determines if it even has jurisdiction over this case. J&J ignores that this Court has a "primary and independent duty to determine its own subject matter jurisdiction." *In re Asbestos Litig.*, 2002 U.S. Dist. LEXIS 3083, at \*6 (D. Or. February 1, 2002). Otherwise, this Court is "'a mere pass-through forum' between the state court and the District of Delaware." *Ibid.* The initial inquiry is the validity of J&J's removal because before this case, or any other removed action, can even hypothetically be transferred to another federal court, *this Court* must have jurisdiction over the removed claims.

It is settled practice in the United States District Court for the District of New Jersey to rule on remand motions before deciding motions to transfer. *Hall v. Welch Foods, Inc.*, 2017 U.S. Dist. LEXIS 165022, at \*9 (D. N.J. October 4, 2017) ("Although Defendants' Motion to Transfer was filed prior to Plaintiffs' Motion to Remand, the Court will first consider the Motion to Remand because it requires determining whether the Court has federal subject matter jurisdiction in the first instance and, thus, granting the Motion to Remand would render the Motion to Transfer moot."); *Royal Indem. Co. v. Admiral Ins. Co.*, 2007 U.S. Dist. LEXIS 85991, at \*5 (D. N.J. November 19, 2007) ("Jurisdiction is a threshold issue...The Court must answer the jurisdictional question before it can consider transferring the case."). Moreover, other courts considering the merits of J&J's removal of these state court products liability matters have scheduled hearings on Plaintiffs' remand motions[10] and as of this filing, **104 cases** across the

---

[10] This Court has set a hearing on remand of four mesothelioma cases for May 14, 2019. Kagan Cert., ¶13, **Exhibit 6,** April 26, 2019 Order of Honorable Kathryn Ferguson. The United States

country have been remanded on both equitable[11] and jurisdictional grounds.[12] Indeed, as the Honorable Cormac J. Carney, United States District Judge for the Central District of California noted, "The issue before the Court is whether removal jurisdiction is proper. Johnson & Johnson offers no authority for the proposition that the Court cannot rule on Plaintiffs' application for remand before the Delaware District Court rules on the motion to fix venue."[13] Accordingly, as addressed below, this Court lacks subject-matter jurisdiction and must remand this case to State Court before considering J&J's request that this Court do nothing while some other court in some other jurisdiction decides a separate motion not before this Court.

## B.    J&J'S REMOVAL IS UNTIMELY.

J&J's removal is untimely pursuant to 28 U.S.C. § 1446(b)(3) which requires a notice of removal be filed within 30 days after it may be ascertained that the case has become removable. The 30-day requirement applies to the removal of claims related to bankruptcy cases under §

---

Bankruptcy Court for the District of Minnesota has set a hearing on a remand motion for June 5, 2019. Kagan Cert., ¶13, **Exhibit 7,** May 3, 2019 Notice of Hearing.

[11] At least three different judges in the Central District of California have remanded **97** cases *sua sponte* back to state court in California based on equitable grounds, finding "Even if the Court may have jurisdiction over the action, the Court concludes that equitable grounds support remand." Kagan Cert., ¶14, **Exhibit 8,** at 1 (*Wagner* Order), Sua Sponte Remand Orders of the Central District of California. *See also* Kagan Cert., ¶15, **Exhibit 9,** Remand Orders in *Cabibi, Weirick,* and *Diess* out of the Central District of California, remanding two living mesothelioma cases back to state court for trial after full briefing from all parties was considered.

[12] After considering full briefing from all parties, including the Southern District of New York Order staying similar actions that had been removed from New York City, the Honorable Margaret Seymour, Senior United States District Judge for the District of South Carolina, Columbia Division, issued a Remand Order, finding that, under *In re W.R. Garce & Co.*, 412 B.R. 657, 667 (D. Del. 2009), "When there is no automatic liability for indemnification, and a subsequent lawsuit does not require prior determination of indemnification," as we have in the instant case, "there is no 'related to' jurisdiction." Kagan Cert., ¶16, **Exhibit 10,** May 3, 2019 Opinion and Order in *Johnson* and *Greenley, Jr.* Judge Seymour went on to note that "Discussing the potential for indemnification or litigation regarding indemnification at this stage is mere speculation" and determined that "it does not appear that there is related to jurisdiction." *Id.* at 4.

[13] Kagan Cert., **Exhibit 9,** *Cabibi* Remand Order at fn 2.

1452. *Estate of Scott v. Cervantes*, 2008 U.S. Dist. LEXIS 129198, 2008 WL 11337657, *4 (C.D. Cal. 2008) (citing *Davis v. Ocwen Fed. Bank*, 2006 U.S.Dist. LEXIS 3221, 2006 WL 155241, at *15 (M.D. Ala. 2006)("By its plain language, the 30-day requirement of § 1446(b) applies to cases removed under § 1452")). It is undisputed that Imerys filed its petition for bankruptcy on February 13, 2019.[14] J&J filed its notice of removal on April 28, 2019, more than 60 days later. J&J's notice of removal is therefore untimely. Moreover, the Imerys debtors approached J&J <u>months</u> before filing their bankruptcy petition, and alerted J&J of the impending filing.[15] J&J has no good-faith basis for the delay in its removal of this trial set case. While Plaintiffs recognize there is a Circuit split in application of the 30-day requirement to removal of claims related to bankruptcy cases under § 1452, based on the above, J&J should be estopped from arguing its removal was timely.

Further, after the filing of Imerys' bankruptcy on February 13, 2019, J&J has continued to participate in litigating this case in state court. Specifically, on March 29, 2019, J&J attended and engaged in a Case Management Conference before the State Court. As a result, J&J waived its right of removal, and the case should be remanded.

### C. THIS COURT LACKS SUBJECT MATTER JURISDICTION.

There is no proper basis to remove this case from the State Court, and it should be remanded immediately. Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334, which confers jurisdiction on the District Court over cases "arising under title 11, or arising in, or related to cases under title 11 [the Bankruptcy Code]." *See also Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S. Ct. 1493, 1498 (1995). Plaintiffs' lawsuit against J&J is not a bankruptcy

---

[14] Kagan Cert., ¶ 8.
[15] Kagan Cert., ¶ 8, 9.

proceeding. Nor is it an action that could only exist in a bankruptcy proceeding. Thus, it does not arise under title 11, nor does it arise in title 11.

Instead, J&J alleges that Plaintiffs' personal injury lawsuit is "related to" the Imerys bankruptcy case under title 11. 28 U.S.C. § 1334(b). A matter is characterized as "related to" a pending Chapter 11 bankruptcy proceeding if it "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995)). Importantly, *Pacor*'s "conceivable effect" test asks "whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 172 (3d Cir. 2009) (quoting *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)).

The Third Circuit's opinions in *Pacor* and its progeny are particularly relevant to whether the existence of an indemnity or insurance agreement between third-parties and the debtor create "related to" jurisdiction. "An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction." *Federal-Mogul Global, Inc.*, 300 F.3d at 382. Rather, the indemnification right must "accrue upon the filing of the civil action in the proceeding related to the bankruptcy case" and be "clearly established." *Id.* If "the right to indemnification is contingent on a factual finding in the action not involving the bankruptcy debtor" or "requires the commencement of another lawsuit to establish that right" indemnification will not give rise to "related to" jurisdiction. *Id.*

The Third Circuit had an opportunity to revisit *Pacor* in *Federal-Mogul Global, Inc.*, 300 F.3d 368 and, again, found that an indemnity right was insufficient to create "related to" jurisdiction. The *Federal-Mogul* Court focused on whether "the allegedly related lawsuit would

affect the bankruptcy proceeding without the intervention of yet another lawsuit." Because the rights that conceivably affected the bankruptcy estate had not "yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy," the Third Circuit affirmed the District Court's remand for lack of jurisdiction. *Id.* at 382.

Similar to the arguments raised here, *Federal-Mogul* involved the removal of personal injury claims alleging asbestos exposure by product manufacturers who argued that the "crisis" created by the current asbestos litigation environment would be "ameliorated" by sweeping up Plaintiffss' claims into a single federal proceeding that piggybacked on a supplier's pending bankruptcy. *Id.* at 390. The *Federal-Mogul* Defendants repeatedly questioned "whether the American judicial system is capable of dealing with the recent explosion of [asbestos claims] in a fair and rational manner." The Court noted that this argument has been "rejected both by this court in *Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3d Cir. 1996), where we stated that 'against the need for effective resolution of the asbestos crisis, we must balance the integrity of the judicial system,' *id.* at 617, and by the Supreme Court, which affirmed that decision." *Id.* (citing to *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997), *aff 'g sub nom. Georgine*, 83 F.3d 610). The *Federal-Mogul* Court likewise rejected these arguments, noting that while a "nationwide class action" would provide a mechanism for consolidating cases in one proceeding, "such proposals, frequently made, have not passed both houses of Congress." *Id.*

Shortly after its *Federal-Mogul* opinion, the Third Circuit addressed the argument that shared insurance and a "unity of interest" between asbestos manufacturer and supplier gave rise to "related to" jurisdiction. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231 (3d Cir. 2004). The *Combustion* Court rejected both arguments. As to Defendants' unity-of-interest claim, the Court

pointed to the long line of Third Circuit opinions rejecting "'related to' jurisdiction over third-party claims involving asbestos or asbestos-containing products supplied by the debtor when the third-party claim did not directly result in liability for the debtor." *Id.* at 231. "[U]nity of exposure created by asbestos contained in a common product" was not sufficient to create "related to" jurisdiction. *Id.* at 232. As to shared insurance proceeds, the *Combustion* Court noted that the right to insurance proceeds was disputed and not automatic, rejecting the self-serving statement that "'the shared insurance has one cap'" and that, regardless, it was "doubtful whether shared insurance would be sufficient grounds upon which to find related-to jurisdiction over independent claims against [the non-debtors]." *Id.* at 233.

More recently, the Third Circuit addressed whether indemnity and shared insurance agreements created "related to" jurisdiction in *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 172 (3d Cir. 2009). The Court examined whether a third party (the State of Montana) would need to file a separate action for indemnity from the debtor (W.R. Grace). Because Montana would first need to be found liable and then file a separate lawsuit to determine W.R. Grace's indemnity obligations, the impact on the debtor's estate was insufficient to sustain "related to" jurisdiction. *Id.* The Court went on to confirm that "unity of interest" is really an evaluation of whether the debtor's liability is derivative of the third-parties. The *W.R. Grace* Court, reviewing its opinion in *Combustion*, found "related to" jurisdiction was absent where there was "little evidence of derivative liability" and the third-party claims involving asbestos or asbestos-containing products supplied by the debtor "did not directly result in liability for the debtor" *Id.* at 172. Rephrased, even if Montana were a creditor in W.R. Grace's bankruptcy proceeding, it would have to file a new claim for indemnity with respect to each

Plaintiffs' claim—a circumstance that the Third Circuit has repeatedly found does not give rise to "related to" jurisdiction. *Id.*

J&J raises three primary arguments for "related to" jurisdiction under 28 U.S.C. § 1334: (1) indemnity agreements with Debtors; (2) shared insurance agreements; and (3) shared unity of interest such that a finding of liability as to J&J will determine Debtors' liability. The facts do not support J&J's "related to" contention; alleged indemnity agreements, alleged shared insurance, and claimed unity of interest all fail to confer "related to" jurisdiction to this Court or a Delaware court. The Debtors are not parties to Plaintiffs' lawsuit. Plaintiffs does not assert any claims against Debtors or their estates.[16] Plaintiffs' claims against J&J are based solely on its own individual conduct, not a theory of derivative liability, such as successorship, agency, or alter ego liability. *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009). The potential that J&J might someday have contribution and indemnity claims against the Debtors, if it is held liable on Plaintiffs' claims, and the possibility of shared insurance as a result, is too tenuous and speculative a basis to confer subject matter jurisdiction in a dispute between two non-debtors that does not involve property of the estate. *Pacor, Inc., v. Higgins*, 743 F.2d 984, at 995; *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231 (3d Cir. 2004); *In re W.R. Grace & Co.*, 591 F.3d 164, 172 (3d Cir. 2009); *Skylark v. Honeywell Int'l Inc.*, 2002 U.S. Dist. LEXIS 10554, at *8 (S.D. Fl 2002). Indeed, J&J failed to cite to a single example of a contribution or indemnity claim brought against Imerys, and made no effort to oppose the severance of Imerys for lack of liability in this case. *See In re Asbestos Litig.*, 2002 U.S. Dist. LEXIS 3083, at *11-12 (D. Or. February 1, 2002) (rejecting "related to" jurisdiction stemming from indemnity and contribution claims, finding that

---

[16] Kagan Cert., **Exhibit 11**, Motion to Sever ITA filed on March 29, 2019.

"hypothetical indemnity and contribution claims...with almost no factual support... are not sufficient to show 'related to' bankruptcy jurisdiction. Defendants were unable to cite a single example of a contribution or indemnity claim brought against [Debtor]." *Id.* (internal citations omitted)).

The potential of jurisdiction based on asserted indemnity and insurance rights is called into question by J&J's failure to disclose the existence of *any* indemnity or insurance agreements in response to required discovery requests and disclosures in personal injury products liability mesothelioma cases across the country. In its Response to Requests for Production of Documents in another New Jersey state case, J&J was asked to identify any party that would indemnify or reimburse J&J should judgment against it be entered, and J&J denied the existence of any such party:

> REQUEST NO. 85: Any and all documents and tangible things establishing that someone other than a person carrying on an insurance business may be liable to satisfy part or all of a judgement which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

> RESPONSE:...Subject to and without waiving the foregoing objections, JJCI responds as follows: JJCI is capable of paying any reasonable judgment in the present case.[17]

In another New Jersey state case—*McNeill-George v. Brenntag North America, Inc., et al.*—J&J very plainly denied the existence of any indemnification claim:

> INTERROGATORY NO. S4: Please set forth all parties to this lawsuit that defendant asserts a claim against for indemnification.

> ANSWER: ... **None.**[18]

---

[17] Kagan Cert., **Exhibit 12** at 88, Defendant's Answers to First Supplemental Interrogatories and Requests for Production of Documents Propounded to J&J in *Kelley-Stramer v. Brenntag North America, Inc., et al.*

Similarly, in response to its Response to Plaintiffs' Requests for Disclosure in Texas, J&J responded:

**(g) any indemnity and insuring agreements described in Rule 192.3(f)[19];**

Defendants state that the policy underlying the disclosure of insurance information is implicated where such documents would bear on the issue of a defendant's ability to satisfy a judgment. Defendants state that they have a reasonable and good faith belief that the above policy concern is unlikely to be implicated in this action.

To the extent that this Request seeks a different response, Defendants object on the grounds that it seeks information that is not relevant and/or not proportional to the needs of the case.[20]

The signature of J&J's attorney on its disclosures "constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made." Tex. R. Civ. P. 191.3(b). J&J did not supplement its discovery responses or provide any further information regarding its insurance policies (shared or otherwise). J&J did not disclose the existence of any indemnity or insurance agreements when properly sought by a Plaintiffs suffering from mesothelioma but now relies on these alleged agreements when the purpose suits it.

Like the removing Defendants in *Combustion Eng'g, Inc.*, 391 F.3d 190, J&J's reliance on the Sixth Circuit's decision *In re Dow Corning Corp. (Dow I)*, 86 F.3d 482, 497 (6th Cir. 1996) is misplaced. Our Court has made clear that the unity of interest that was found in *Dow I* does not apply to asbestos personal injury claims, rejecting the Sixth Circuit's "related to"

---

[18] Kagan Cert., **Exhibit 16**, J&J Responses at Interrogatory No. 4, p. 21.

[19] Rule 192.3(f) provides that "[e]xcept as otherwise provided by law, a party may obtain discovery of the ***existence and contents of any indemnity or insurance agreement*** under which any person may be liable to satisfy part of all of a judgment rendered in the action or to indemnity or reimburse for payments made to satisfy the judgment." Tex. R. Civ. P. 192.3(f).

[20] Kagan Cert., **Exhibit 13**, J&J Response No. (g); *see also* Tex. R. Civ. P. 191.3, 192.3, 193.1, in *Lopez v. J&J, et al.*

standard J&J advances here. *Combustion Eng'g, Inc.*, 391 F.3d at 227 (rejecting *Dow I*, reiterating that "*Pacor*, and not *Dow Corning I*, provides the controlling standard for assessing 'related to' bankruptcy jurisdiction").

Further, the *Dow I* court gave great weight to the fact that the non-debtor defendants had already asserted cross-claims against each other and the debtor in the underlying litigation. *Dow I*, 86 F.3d at 494. Here, no cross-claims for indemnity or contribution have been filed by any defendant, debtor or non-debtor. Further, J&J has not demonstrated that it has demanded indemnity from Imerys for any of J&J's asbestos liabilities arising from any of the current mesothelioma lawsuits, and especially the claims asserted by Plaintiffs. Certainly, J&J has not demonstrated that it owned shared insurance policies with Imerys related to mesothelioma claims.

The *Dow I* court recognized that *Pacor* was appropriate for the single suit involved in that case, whereas the number of cases involved in *Dow I* (a class action) posed a greater threat to the debtor's Chapter 11 reorganization. *Dow I*, 86 F.3d at 494. The *Dow I* Plaintiffs had already been determined to have such a unity of claims that the federal judicial panel determined to try them together. *Id.* at 485. Here, there is only one Plaintiffs, so the *Pacor* test argues against the exercise of jurisdiction. While J&J will undoubtedly point to other state talc claims as evidence that *Dow I* applies, there is no unity of exposure, time frame, products, disease or applicable law. Since *Dow I*, other federal courts have made clear that the unity of interest that was found in *Dow I* does not apply to asbestos personal injury claims, rejecting the "related to" standard J&J advances here. *See Combustion Eng'g, Inc.*, 391 F.3d at 227 (rejecting *Dow I*, reiterating that "*Pacor*, and not *Dow Corning I*, provides the controlling standard for assessing 'related to' bankruptcy jurisdiction").

Finally, J&J's citation to the Fourth Circuit's opinion in *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) is also unavailing. The *Combustion Eng'g, Inc.* Court explicitly found *A.H. Robins Co.* was "readily distinguishable, given that [it] involved [neither] asbestos or §524(g)."[21] *Id.* at 237 n.50. Here, Plaintiffs' case involves asbestos claims. The alleged indemnity and insurance provisions cited by J&J are far from undisputed. Currently, J&J denies any liability to Plaintiffs, judicially admitting that there are no "claims" for contribution or indemnity, as there is no liability. If J&J prevails at trial, there will be no effect on Debtors' estate as there will be nothing to indemnify. If and when J&J is held liable to Plaintiffs, it can then assert and litigate whatever possible contribution, indemnity and insurance claims it may have against the Debtors in the Delaware Bankruptcy Case. Regardless, separate proceedings would be required to determine what effect, if any, will occur on Debtor's estate, destroying any potential "related to" jurisdiction arguments under *Pacor* and its progeny. 743 F.2d 984. Accordingly, remand is proper.

**D.    EVEN IF SUBJECT MATTER JURISDICTION WERE PRESENT, ABSTENTION REQUIRING REMAND WOULD BE PROPER.**

Even if the Court determines that it has "related to" jurisdiction, the Third Circuit requires this Court follow the equitable doctrine of abstention and remand this case.

**1.** Background on Abstention.

Since remand can be based upon "any equitable ground," courts often apply the standards applicable to the abstention statute when considering whether remand is appropriate. *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008); *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006); *Gregory Rock House Randy, LLC. v. New Mexico State Engineer*, 339 B.R. 255, 258

---

[21] "Whatever may be the limits of §105(a) in other contexts, we hold only that § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor."

(Bankr. D.N.M. 2006) (citing *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 775 (10th Cir. BAP 1997) (holding that if abstention is required under 28 U.S.C. § 1334(c)(2), a court should remand the matter to state court).

If mandatory abstention applies, the removal court cannot adjudicate the case and thus has no rational basis to keep it. A remand back to the state court is the only appropriate response. Even where abstention would be discretionary rather than mandatory, the presence of factors suggesting discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) may provide sufficient grounds for remand. *Balcor/Morristown Ltd. Pshp. v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J. 1995) ("It is frequently held that the standards for deciding whether permissive abstention and equitable remand will be appropriate are substantially the same"); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 760 (D.N.J. 1996) ("these equitable factors compel the conclusion that the remand of this action is appropriate under the doctrines of permissive abstention and equitable remand, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), respectively").

The abstention analysis applies to cases removed to federal court on the basis of bankruptcy jurisdiction. *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006); *see also, Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 929 (5th Cir. 1999) (acknowledging some contrary case law but adopting the "majority rule" that removed cases are subject to abstention pursuant to 28 U.S.C. § 1334(c) and noting the lack of any textual support in the statute for a contrary rule).

## 2.  Core Proceeding and Non-Core Proceeding Defined.

The terms "core proceeding" and "non-core proceeding" are terms of art.  They originate in the statutory language of 28 U.S.C. § 157(b)(1) and (2).  The terms are illustrated by example rather than explained by precise definition.  However, case law has provided a generally accepted definition: "We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Southmark*, 163 F.3d at 930; *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Core proceedings are proceedings which have no existence outside of bankruptcy."); *Schultze v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014) ("Claims that arise under or in title 11 are deemed to be 'core proceedings,' while claims that are related to title 11 are 'noncore proceedings'" (internal citation omitted)).  "Core proceedings arising in title 11 are matters "that are not based upon any right expressly created by title 11, but nevertheless would have no existence out of the bankruptcy." *Id.* Non-core proceedings do not invoke substantive rights created by bankruptcy law and can exist independent from the bankruptcy. *Gregory Rock House*, 339 B.R. at 259 (citing *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987).  A bankruptcy court has "related to" jurisdiction over a non-core proceeding if it could conceivably affect the administration of the bankruptcy estate.  *Gregory Rock House*, 339 B.R. at 259 (citing *Gardner*, 913 F.2d at 1518).

## 3.  Abstention Is Mandatory and Remand Is Appropriate.

Mandatory abstention derives from 28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based on a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from

> hearing such proceeding if an action is commenced, and can be timely
> adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2); *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008). Section (c)(2)

addresses situations where a court has no discretion and must abstain. It pertains only to non-

core proceedings. A court must abstain and remand a case premised on "related to" bankruptcy

jurisdiction where: (1) a timely motion is made; (2) the proceeding is based upon a state law

claim or state law cause of action; (3) federal courts would not have jurisdiction absent its

relation to a bankruptcy case; and (4) the action can be timely adjudicated in the state forum. *In

re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008). The Third Circuit has explained that

§1334(c)(2):

> reflects a congressional judgment that a party who wishes to litigate a state
> claim in a state court, but finds himself in a federal court solely because
> the controversy is related to a bankruptcy, should be able to insist upon a
> state adjudication if that will not adversely affect the bankruptcy
> proceedings. Given that judgment, we can perceive no reason why
> Congress could have decided to deny mandatory abstention to a party who
> filed his state claim in a state court, only to have it removed to a federal
> court.

*Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006).

Plaintiffs' personal injury claims against J&J are not core proceedings within the

meaning of 28 U.S.C. § 157. Plaintiffs asserts State law product liability claims under the New

Jersey Product Liability Act against J&J for personal injury resulting from exposure to asbestos

fibers contained in its cosmetic talc products. Plaintiffs does not assert any claims against the

Debtors in the Delaware Bankruptcy Case. If J&J had filed its own bankruptcy case, then

Plaintiffs' claim would be against that bankruptcy estate and an action to liquidate that claim

would be a core proceeding under 20 U.S.C. § 157(b)(2)(B).[22] However, J&J did not file its own bankruptcy case. Plaintiffs' lawsuit against J&J existed before the Debtors filed their Bankruptcy Case in Delaware and would continue to exist if the Bankruptcy Case were dismissed. Plaintiffs' lawsuit does not invoke any substantive right provided by title 11. Nor is it "a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *See In re Exide Techs.*, 544 F.3d at 218 n.14; *Southmark*, 163 F.3d at 930; *Gardner,* 913 F.2d at 1518; *Schultze,* 765 F.3d at 948. Thus, because Plaintiffs' personal injury claims against J&J are not core proceedings within the meaning of 28 U.S.C. § 157, they are subject to mandatory abstention if the four statutory elements of 28 U.S.C. § 1334(c)(2), set forth above, are satisfied.

Indeed, they are. First, Plaintiffs' lawsuit against J&J is based upon New Jersey state law and asserts no federal cause of action. Pursuant to Federal Rule of Evidence 201, Plaintiffs asks the Court to take judicial notice of their pleadings, which are required to be attached to the Notice of Removal. *See* Fed. R. Bankr. Proc. 9027(a)(1). Second, there is no basis for federal jurisdiction other than the assertion of "related to" bankruptcy jurisdiction by J&J. The pleadings do not reflect any other basis for federal jurisdiction over these New Jersey state law claims. If J&J had thought otherwise, it would have removed the case to federal court on some other theory of federal jurisdiction long ago. Third, Plaintiffs' lawsuit was already pending in State court long before the Debtor filed their Bankruptcy Case in Delaware.[23] The file stamps on the pleadings reflect that undisputed fact. Fourth, Plaintiffs' lawsuit was set to "be timely adjudicated in a State forum of appropriate jurisdiction" before J&J filed its abusive Notice of Removal. In fact, the New Jersey Supreme Court has designated New Jersey state court asbestos

---

[22] J&J is trying, improperly, to get the benefits of a Chapter 11 case without the burden of filing one.
[23] Kagan Cert., ¶ 3.

litigation as a mass tort and has assigned that litigation for centralized management to a single judge in Middlesex County.[24] The Honorable Ana Viscomi, J.S.C. has been presiding over all New Jersey asbestos-related cases, including the Plaintiffs' case, since March 1, 2014,[25] and has considered and ruled on virtually every issue relevant to this litigation, ranging from discovery disputes, to summary judgment motions, to expert qualifications and opinion admissibility, to presiding over three J&J mesothelioma talc trials to verdict.[26] It is disingenuous to argue that Judge Viscomi is unable to or cannot timely adjudicate this matter.

Thus, all elements for mandatory abstention apply to this action. This Court cannot adjudicate it. Nor could a federal District Court in Delaware. Keeping the case in the federal system is pointless and desperately unfair to Plaintiffs, who have spent over a year litigating their claims against J&J in state court and are months away from their trial date. Prompt remand to State court is appropriate.

### E. EVEN IF MANDATORY ABSTENTION DID NOT APPLY TO THIS CASE, THE FACTORS SUPPORTING PERMISSIVE ABSTENTION WARRANT REMAND TO STATE COURT.

Even if mandatory abstention did not apply to this case, the factors supporting permissive abstention also counsel remand to State court. *Gregory Rock House*, 339 B.R. at 259; *Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971, 981 (Bankr. N.D. Ala 1996); *SBMC Healthcare,* 519 B.R. at 190. Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides as follows:

> Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

---

[24] April 11, 2008 Notice to Bar, **Exhibit 1** to Kagan Cert.
[25] February 10, 2014 Order of Supreme Court of New Jersey, **Exhibit 2** to Kagan Cert.
[26] Kagan Cert., ¶ 5.

Section 1334(c)(1) allows for discretionary abstention from core matters when abstention best serves the interests of justice, judicial economy, or respect for state law. *Gregory Rock House*, 339 B.R. at 259; *see also McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 190-93 (Bankr. S.D. Tex. 2014). The equitable considerations relevant to the appropriateness of equitable remand and discretionary abstention under sections 1452(b) and 1334(c)(1), respectively, "are essentially identical, and, therefore, a court's analysis is essentially the same for both types of relief." *Balcor/Morristown Ltd. P 'ship v. Vector Whippany Assocs.*, 181 B.R. 781, 788 (D.N.J. 1995). "Various factors have been developed for the court to consider when determining whether to exercise its discretionary abstention power. Some courts rely on a twelve-part test, while others utilize a seven-part test." *Ashland Inc. v. G-I Holdings Inc. (In re G-I Holdings, Inc.)*, 564 B.R. 217, 249-50 (Bankr. D.N.J. 2016) *aff'd G-I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings, Inc.)*, Civil Action No. 17-0077, 2017 U.S. Dist. LEXIS 68891 (D.N.J. May 5, 2017). The seven-part test looks at: 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of the right to a jury trial; and 7) prejudice to the involuntarily removed defendants. *Id.* (citing, e.g., *Jazz Photo Corp. ex rel. Moore v. Dreier LLP*, 2005 U.S. Dist. LEXIS 36396, 2005 WL 3542468, at *7-8 (D.N.J. 2005)). The *SBMC* court cites fourteen (14) factors to consider, including, *inter alia*: (1) the effect or lack thereof of the efficient administration of the bankruptcy estate, if the court recommends remand or abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in a state court; (5) the

jurisdictional basis, if any, other than Section 1334; (6) the degree of relatedness or remoteness from the proceeding to the main bankruptcy case (10) the likelihood of forum shopping by one of the parties, (11) the existence of a right to jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. *In re SBMC Healthcare, LLC*, 519 B.R. at 190-93.

All of the factors that govern permissive abstention under 28 U.S.C. §1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are either neutral or weigh heavily in favor of remand:

Effect on the efficient administration of the bankruptcy estate. The same arguments that prevent this court from exercising "related to" jurisdiction under Third Circuit precedent likewise demonstrate that Plaintiffs' claims against J&J will not affect to the Debtors' estate. Further, the primary argument advanced by J&J against permissive remand—that the bankruptcy court will be able to more efficiently adjudicate Plaintiffs' state court claims if consolidated in one court— has also been expressly rejected by this Court. *G-I Holdings*, 2017 U.S. Dist. LEXIS 68891, at *34 (noting the absence of any authority "supporting the proposition that when courts consider the 'effect on the efficient administration of the bankruptcy estate,' courts should actually be examining "judicial efficiency and economy.") (citing *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 760 (D.N.J. 1996).

Difficulty or unsettled nature of the applicable state law. The merits of Plaintiffs' case involve several issues of contested state law that favor remand. For example, a verdict against J&J in another mesothelioma case—involving the same issues presented in the instant case (including the admissibility of the testimony of many of the same experts)—is on appeal to the

New Jersey Superior Court Appellate Division.[27] Further, if this case is swept up to the Delaware

District Court along with thousands of cases from jurisdictions across the country, under the *Erie*

doctrine, New Jersey law would apply to it on substantive issues like causation, but would not

apply to cases that were not originated in New Jersey. This presents a particularly difficult

quandary when conflicts exist between jurisdictions on elements of Plaintiffs' claims.[28] These

peculiarly state law issues should be addressed by the State Court.

    <u>Comity</u>. This is a State Court proceeding with over a year of active litigation that is mere

months away from trial. It would be inconsistent with the principles of comity for the Federal

Court to exercise jurisdiction over this matter. The Defendants in *Federal-Mogul* made many of

the same arguments that J&J makes here. But J&J's attempt to portray a "crisis" created by the

current asbestos litigation environment that would be "ameliorated," by sweeping up Plaintiffs'

case in a morass of thousands of other cases, is not a new argument and has been thoroughly

rejected by the Third Circuit. *Id.* at 390. In doing so, the *Federal-Mogul* Court noted that this

argument has been "rejected both by this court in *Georgine v. Amchem Products, Inc.*, 83 F.3d

610 (3d Cir. 1996), where we stated that 'against the need for effective resolution of the asbestos

crisis, we must balance the integrity of the judicial system,' *id.* at 617, and by the Supreme

Court, which affirmed that decision." *Id.* (citing to *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997), *aff 'g sub nom. Georgine*, 83 F.3d

610)(explaining that a "nationwide class action" would provide a mechanism for consolidating

---

[27]Kagan Cert., ¶ 12.

[28] By way of example, Texas requires a plaintiff's dose to be calculated in order to establish specific causation (*Borg-Warner v. Flores*, 232 S.W.3d 765, 772-773 (Tex. 2007)) while New Jersey follows the substantial factor test requiring plaintiff prove exposure to asbestos be merely more that "de minimus". (*Kurak v. A.P. Green Refractories, Inc.*, 298 N.J. Super. 304, 313-22 (App Div.), *certif. denied*, 152 N.J. 10 (1997)).

cases in one proceeding, "such proposals, frequently made, have not passed both houses of Congress." *Id*.).

Degree of relatedness or remoteness of the proceeding to the main bankruptcy case. As explained in Plaintiffs' argument for the lack of "related to" jurisdiction, the connection between Plaintiffs' claims against J&J and Debtors' bankruptcy is tenuous and speculative. Even if the connection is enough to create "related to" jurisdiction, it is remote enough to weigh in favor of permissive remand.

Burden of the court's docket. The burden on the Court's docket if J&J is allowed to remove and transfer over 2000 state court talc claims is immense. The Delaware District Court to which J&J seeks to transfer all of these cases only has four judges. Many of these cases, including Plaintiffs', involve individuals who are suffering from mesothelioma—a fatal cancer that will require the court to hold numerous expedited trials in perpetuity.

Likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties. Just like the Defendants in *Federal-Mogul*, J&J makes no attempt to hide the fact that it seeks to sweep thousands of state court cases—many of which have been extensively litigated under various states' law—into a single, overloaded forum, which will necessarily prevent or delay living Plaintiffs from participating in their trials.

The remaining factors are either inapplicable or neutral on permissive remand, as summarized in the chart below:

| FACTOR | JUSTICATION FOR REMAND |
|---|---|
| Extent to which issues of state law predominate | Plaintiffs' claims arise solely under the NJPLA. |
| Existence of the right to a jury trial | It is uncontested that the Plaintiffs have a right |

| | to have their claims tried before a jury. |
|---|---|
| Prejudice to the involuntarily removed defendants | There are no involuntarily removed defendants in Plaintiffs' case. |
| Presence of a related proceeding commenced in state court or other non-bankruptcy court | This factor also weighs in favor of remand because other talcum powder product manufacturers remain in the New Jersey state court action. *See* Kagan Cert., ¶ 3. |
| Jurisdictional basis, if any, other than 28 U.S.C. § 1334 | J&J has not identified any other basis for federal jurisdiction in its notice of removal. |
| Substance rather than form of an asserted "core" proceeding | This is not a core proceeding and this factor weighs in favor of remand. |
| Feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court | This factor does not apply because this is not a core proceeding and there is nothing to suggest a judgment will be enforced against any other entity but J&J. |
| Presence in the proceeding of non-debtor parties | None of the current parties to this action are the Debtors. |

Apart from the factors identified in *Ashland Inc. v. G-I Holdings Inc. (In re G-I Holdings, Inc.)*, 564 B.R. 217, 250 (Bankr. D.N.J. 2016), the plain language of 28 U.S.C. § 1452(b) instructs that a court remand on "any equitable ground." Upholding the removal of these cases will force Plaintiffs to comply with different Federal Court requirements, which would restart the clock on discovery, effectively guaranteeing that sick Plaintiffs such as Mrs. DeJesus will never

see her day in court. J&J's transparent efforts to evade addressing the merits of Plaintiffs' allegations must not be tolerated by the Court. The fact that Mrs. DeJesus is presently suffering from an incurable cancer and is prepared to proceed to trial after spending months conducting significant discovery and well on their way to trial, establishes a clear equitable basis for immediate remand.

## IV.    CONCLUSION

J&J is trying to do now what the defendants tried to do in the Federal-Mogul bankruptcy case seventeen years ago. It was wrong then, and it's wrong now. The result should be the same now as it was seventeen years ago. Perhaps King Solomon said it best nearly 3,000 years ago: "What has been will be again. What has been done will be done again. There is nothing new under the sun." Ecclesiastes, Chapter 1, Verse 9. For the foregoing reasons, Plaintiffs respectfully asks that this Honorable Court grant their Motion to Remand and Remand Plaintiffs' case back to the New Jersey Superior Court for Middlesex County pursuant to 28 U.S.C. §§ 1441 and 1447(c).

Dated: May 18, 2019

Respectfully submitted,
SZAFERMAN LAKIND
BLUMSTEIN & BLADER, P.C.

*s/ Arnold C. Lakind*
Arnold Lakind, Esq.
*alakind@szaferman.com*
Robert Lytle, Esq.
*rlytle@szaferman.com*
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400

SIMON GREENSTONE PANATIER, P.C.

*s/ Leah Kagan*
Leah Kagan

*lkagan@sgptrial.com*
SIMON GREENSTONE PANATIER, P.C.
5 Penn Plaza, Suite 2308
New York, New York | 10001
212-634-1690
Attorneys for Plaintiffs