# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Bankr. Case No. 19-10289-LSS |
| IMERYS TALC AMERICA, INC., *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Misc. No. 19-103-MN |

___

**MEMORANDUM OPINION**

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the Emergency Motion for Provisional Transfer Under 28 U.S.C. § 157(b)(5) (D.I. 12 & 13) ("Emergency Provisional Transfer Motion") filed by non-debtors Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "J&J") on April 30, 2019. The motion seeks entry of an order directing provisional transfer of approximately 2,400 federal and state personal injury and wrongful death actions, pending this Court's decision on J&J's Motion to Fix Venue for Claims (D.I. 1, 2, 3 & 4) ("Venue Motion"), which was filed on April 18, 2019. J&J has also filed a request that the Court enter an order granting the Emergency Provisional Transfer Motion immediately and on an *ex parte* basis (D.I. 15). ("Motion for *Ex Parte* Relief"). The Court has reviewed J&J's motion papers with respect to the Emergency Provisional Transfer Motion and the Motion for *Ex Parte* Relief and considered the oppositions filed with respect to those motions by the Official Committee of Tort Claimants ("Committee") (D.I. 17 & 31) and various law firms on behalf of affected plaintiffs (D.I. 19, 21, 32, & 33). The Court has further considered J&J's replies and affidavits in further support of relief. (D.I. 22, 23, 28, 29, & 30). For the reasons set forth below, the Court will **DENY** both the Emergency Provisional Transfer Motion and the Motion for *Ex Parte* Relief.

I. **BACKGROUND**

J&J's motions relate to the chapter 11 cases of Imerys Talc America, Inc. and certain affiliates (together, "Debtors").[1] On February 13, 2019, the Debtors filed their Chapter 11 petitions. J&J is a defendant in numerous personal injury and wrongful death actions pending in state and federal courts all over the country. Each plaintiff alleges that exposure to talc – through

---

[1] *See In re Imerys Talc America, Inc., et al.,* Case No. 19-10289 (LSS) (Bankr. D. Del.).

products like Johnson's Baby Powder – caused cancer, primarily mesothelioma or ovarian cancer. J&J alleges that Debtors supplied cosmetic talc to J&J for use in some J&J products.

### A.   Venue Motion

On April 18, 2019, J&J filed the Venue Motion seeking to fix venue in this Court with respect to the personal injury and wrongful death claims against J&J that were identified in Exhibit 1 to the motion and to "centralize the adjudication of claims impacting the Debtors' estates" in this Court and "ensure orderly and efficient resolution of these claims."  (*See* D.I. 1). The authority for the relief requested in the Venue Motion is 28 U.S.C. §§ 157(b)(5) and 1334(b). (*See id.* at 2).  Section 1334(b) provides, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Section 157(b)(5) provides: "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."  28 U.S.C. § 157(b)(5). Certain courts have held that § 157(b)(5) is not limited to cases already pending in the bankruptcy court and "should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are 'related to' bankruptcy proceedings pursuant to Section 1334(b)."  *See e.g., In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1010 (4th Cir.1986), *cert. denied*, 479 U.S. 876 (1986).  This "related to" jurisdiction may extend to "suits between third parties that conceivably may have an effect on the bankruptcy estate."  *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009); *In re Combustion Eng'g, Inc.*, 391 F.3d 390, 226 (3d Cir. 2004).  "Broadly worded as that is, however, related-to jurisdiction is '"not without limitation."'  *Id.* at 228.  *See e.g., Pacor Inc. v. Higgins*, 743 F.2d 984, 994-95

(3d Cir. 1984) (concluding "related to" jurisdiction did not extend to civil proceeding between non-debtors Higgins and Pacor because, "[a]t best, [the lawsuit] is a mere precursor to the potential third party claim for indemnification by [defendant] against [the debtor]").

J&J argues that, because supply agreements between the Debtors and J&J contain cross-contractual indemnifications triggered upon the filing of the claims without regard to findings on underlying liability, the claims affect the Debtors' estates. Similarly, it argues that the Debtors have claimed rights to J&J's insurance for expenses incurred in defending against the talc-related lawsuits, and that the claimed shared insurance could increase or decrease the pool of assets available for creditors. On this basis, the Venue Motion argues that all individual state-law personal injury or wrongful death claims against J&J are "related to" the Debtors' bankruptcy and, on that basis, this Court should exercise jurisdiction over and order transfer of all 2,400 cases from district courts throughout the United States to this Court. It is the position of various plaintiffs, as well as the Committee, that this Court lacks jurisdiction over these individual litigants and their claims and, in any event, must abstain from exercising subject matter jurisdiction pursuant to § 1334(c). (D.I. 17 at 2, n.1). Briefing on the underlying Venue Motion is underway pursuant to an agreed-upon schedule (D.I. 11, 12) and will be completed by May 23, 2019.

**B.	Removal**

Contemporaneously with the Venue Motion, J&J began removing cases pending in state courts, including apparently some that were on the eve of trial (D.I. 19 at 1), on the basis of 28 U.S.C. § 1452, which governs removal of claims related to bankruptcy cases. Section 1452(a) permits removal of any claim or cause of action to the district court for the district where such civil action is pending, if such district court has jurisdiction over such claim or cause of action under § 1334. *See* 28 U.S.C. § 1452(a). J&J asserts that federal subject matter jurisdiction exists over

3

the removed actions under 28 U.S.C. § 1334(b) because each is "related to" the Debtors' bankruptcy. (D.I. 2 at 6). J&J's removal triggered the 30-day period dictated by 28 U.S.C. § 1447(c) for each respective plaintiff to seek remand of his or her case to state court, and plaintiffs have accordingly begun filing motions for remand. Pursuant to § 1452(b), the district court may remand back to state court "on any equitable ground." 28 U.S.C. § 1452(b). Remand has been ordered in some cases and stayed in others pending the Court's decision on the Emergency Provisional Transfer Motion. (*See* D.I. 30).

    **C.**    **Emergency Provisional Transfer Motion & Motion for *Ex Parte* Relief**

Hours after this Court's entry of the stipulated briefing schedule for the Venue Motion, on April 30, 2019, J&J filed the Emergency Provisional Transfer Motion. Based on plaintiffs' timely filing of remand motions, which J&J can hardly claim to be a surprise, J&J claims that the litigation it has created warrants the granting of a provisional transfer to this Court. On April 30, 2019, J&J also filed its motion arguing that immediate, *ex parte* relief is justified here in order to protect this Court's jurisdiction over the state court claims and prevent conflicting decisions regarding transfer or remand in other courts. (*See* D.I. 15 at 3).

**III.**    **DISCUSSION**

    **A.**    **Immediate, *Ex Parte* Relief**

J&J argues that the interests of the Debtors' creditors and efficient administration of the Debtors' estates will be advanced through immediate, *ex parte* provisional relief and that these interests outweigh state court considerations. (D.I. 30). J&J asserts that immediate provisional transfer will preserve judicial resources, and that if a provisional transfer is not immediately ordered, other federal district courts will waste time and resources determining remand and

abstention issues, which will ultimately be mooted by the Court's ultimate ruling on the Venue Motion. (D.I. 15 at 13).

The Committee opposes immediate, *ex parte* relief, arguing that J&J's own actions seeking to remove the cases caused the "emergency," and thus are not a justification for immediate, *ex parte* transfer of 2,400 cases. (*See* D.I. 17). According to the Committee, there is no emergency here except the one created by J&J, and the relief requested in the Emergency Provisional Transfer Motion is properly addressed in the context of the Venue Motion; if the Court denies the Venue Motion, as the Committee contends it should, the relief sought will be rendered moot. The Committee further argues that immediate, *ex parte* entry of provisional relief should be denied on equitable grounds because J&J waited until the Court's entry of the negotiated briefing schedule to seek provisional relief. (*Id.* at 2). According to the Committee, at no time during the negotiation of the briefing schedule did J&J advise Committee counsel that it was contemplating seeking such relief, or would seek to, among other things, limit the rights of parties-in-interest to brief their opposition in the manner set forth in J&J's proposed order. (*See, e.g.,* D.I. 12-1 ¶ 5 (ii)). According to the Committee, J&J's conduct in agreeing to the briefing schedule only to turn around and file the Emergency Provisional Transfer Motion – mere hours after the Court entered the stipulated briefing schedule – is improper and attempts to undo that which this Court has already ordered.

In addition, certain affected plaintiffs in the underlying cases argue that there are no exigent circumstances justifying immediate, *ex parte* relief. (*See* D.I. 21 at 3). Those plaintiffs argue that J&J essentially seeks the benefits of multidistrict litigation without following the procedures set forth in 28 U.S.C. § 1407, and seeks emergency relief on par with a temporary restraining order without making any showing of irreparable harm to the Debtors or the estates. (*See* D.I. 32 at 3). Those plaintiffs further argue that the request for *ex parte* relief is prejudicial for many plaintiffs,

5

as the question is not merely whether provisional relief can be reversed once the Court addresses the Venue Motion on its merits; rather, the prejudice comes from disruption and delay of pending cases. (*See* D.I. 21 at 3). According to the plaintiffs, some cases are close to trial and the transfer may cause lengthy delays for victims with rapidly deteriorating health. (*Id*.) Finally, the fundamental dispute in the venue motion is the Court's subject matter jurisdiction, and certain plaintiffs argue that granting preliminary *ex parte* relief prior to submission of briefs addressing jurisdictional issues would be inappropriate. (*Id*.)

The Court agrees with the Committee and various plaintiffs that J&J has not satisfied the burden for immediate, *ex parte* relief, which is rarely granted. *Leone v. Towanda Borough,* No. 12-0429, 2012 WL 1123958, at *3 (M.D. Pa. Apr. 4, 2012) (requirements for *ex parte* relief). First, J&J has not shown that its cause will be irreparably harmed. *See id.* Here, J&J is not a Debtor and has not established financial distress. Notably the Debtors themselves have not moved for transfer of venue or sought expedited relief. Additionally, as J&J concedes, the Court may consider the transfer of the cases under § 157(b) regardless of the decisions reached by the state courts on transfer and remand issues, and therefore the Court is not persuaded that these proceedings should be characterized as causing an emergency. *See* Memorandum Order, *Hopkins v. Plant Insulation Company*, C.A. 06-298-JJF (D. Del. May 22, 2006); *see also A. H. Robins Co.,* 788 F. 2d at 998. Thus, there is no prejudice to hearing and deciding J&J's Venue Motion in due course.

Second, J&J cannot show that it is without fault in having created the purported emergency that it claims requires *ex parte* relief. *See Leone*, 2012 WL 112958, at *3. J&J has been a defendant in the underlying state court litigation for years. J&J is responsible for the multiplicity and timing of removal and the ensuing remand motions. Indeed, having chosen to remove the

6

cases, J&J set in motion requests for remand to be filed within the time period prescribed by the statute. The Court further agrees with the Committee that the relief requested in the Emergency Provisional Transfer Motion could have (and should have) been discussed in connection with the discussion of the briefing schedule.

In sum, J&J cannot establish an emergency in the context of the Debtors' bankruptcy or one that has to do with the successful reorganization of the Debtors. J&J's desire to centralize its own state law litigation does not justify the finding of an emergency requiring immediate, *ex parte* entry of provisional relief.

### B. Provisional Relief

J&J argues that provisional transfer through a non-final order is relief that is commonly granted and necessary to preserve time and resources. (*See* D.I. 15 at 2). J&J cites no statutory authority for provisional relief, and § 157(b) does not provide for "provisional" transfer. Instead, J&J argues that provisional orders have been "almost uniformly granted" by other district courts deciding issues under 28 U.S.C. § 157(b)(5), and that provisional transfer of the approximately 2,400 cases to this Court "is a modest and rational measure" because it "does not substantively resolve the transfer issue." (D.I. 13 at 2-3). According to certain plaintiffs, however, J&J's contention that it is requesting routine relief should be rejected. (D.I. 21 at 2). Those plaintiffs argue that the scant cases cited by J&J – three published decisions, averaging less than one per decade – do not establish a routine practice and establish that J&J's request for *ex parte* provisional transfer of venue is extraordinary, rarely granted and, when granted, under distinguishable circumstances. (*Id.*) Additionally, in a number of cases subject to the Emergency Provisional Transfer Motion, none of the Debtors were a defendant at the time of removal, and those plaintiffs ("Responding Plaintiffs") argue that, under controlling law of the Third Circuit, this Court cannot

exercise jurisdiction over the Responding Plaintiffs' lawsuits on a provisional basis or otherwise.[2] (D.I. 32 at 4-5).[3] The Court agrees that the cases cited by J&J do not support a non-debtors' provisional transfer of 2,400 actions irrespective of the facts and circumstances of each case, even on a provisional basis.

J&J cites *A.H. Robins*, arguing that, in that case, the Fourth Circuit approved the district court's transfer order, interpreting that order as "conditional" pending objections of the parties and requests for abstention. In *A.H. Robins*, however, the debtors – not third parties – removed and sought transfer of lawsuits asserting claims directly against the debtors. *See A.H. Robins*, 788 F.2d at 1014-16.

J&J also cites *In re Federal-Mogul Global, Inc.*, 282 B.R. 301 (D. Del. 2002), in which the court considered a motion to transfer numerous asbestos-related claims as "related to" the bankruptcy of another entity under § 157(b)(5). *Id.* at 303-04. In the opinion, the court notes,

---

[2]   Responding Plaintiffs' lawsuits fall into three categories: (1) cases where the exposures to J&J products pre-date the Debtors' supply to J&J; (2) cases where the Debtors were either not named (by either Responding Plaintiffs or J&J) or were dismissed from the case as to all parties prior to J&J's removal; and (3) cases filed after the Debtors' bankruptcy, precluding any assertion of a claim against the Debtors. (*See* D.I. 32 at n.3).

[3]   Responding Plaintiffs make several arguments that will be more fully addressed in response to the Venue Motion. (*See* D.I. 32). For example, they argue that J&J asserts that state-law claims against it are "related to" the Debtors' bankruptcy because, after 1989, Debtors supplied talc to J&J for use in some J&J products. (*See* D.I. 1 at 3-4). Responding Plaintiffs argue that, for cases where the exposures end before the Debtors ever supplied J&J with talc, there is no factual basis to assert that the state law claims against J&J "relate to" the bankruptcy of the Debtors. Because the Debtors are not party to any of the Responding Plaintiffs' lawsuits, another lawsuit will always be required before the Debtors' bankruptcy estates can be impacted by Responding Plaintiffs' lawsuits, and under these circumstances, "related to" jurisdiction does not exist. (*See* D.I. 32 at 5 (citing *In re W.R. Grace & Co.*, 591 F.3d 164, 169 (3d Cir. 2009); *In re Combustion Eng'g*, 391 F.3d 190, 231-32 (3d Cir. 2004)). Additionally, the sole authority J&J has cited for mass transfer of all of these cases is 28 U.S.C. § 157(b)(5). Responding Plaintiffs argue that § 157(b)(5) has no application to their lawsuits because none of the Debtors is a defendant in any of their cases, and § 157(b)(5) applies only to "claims" against the Debtors. (D.I. 32 at 5-7).

without analysis, that movants had previously requested immediate and *ex parte* provisional transfer of the claims "in order to protect them from piecemeal remand orders" until the court could consider the appropriateness transfer, and the court had agreed. *Id.* at 304. On appeal, however, the Third Circuit noted "the parties before us do not question the legitimacy of a provisional transfer and therefore we do not address that issue." *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 374 n.3 (3d Cir. 2002). Having expressly refused to address the propriety of provisional transfers under any circumstances, this case cannot be said to support J&J's position. Additionally, *Federal-Mogul* demonstrates the danger of provisional relief. Indeed, *Federal-Mogul* upheld the district court's finding of no "related to" jurisdiction and its rejection of the non-debtors' motions to transfer under § 157(b)(5). The cases were remanded back to state court. The state courts presiding over these cases – and the parties – thus were disrupted twice.

J&J further cites *Dow Corning* as a case where movant's request for provisional transfer was granted on an immediate and *ex parte* basis. (*See* D.I. 13 at 6-7). That case involved a motion to transfer product liability claims under § 157(b)(5). *In re Dow Corning*, No. 95-20512, 1995 WL 495978, at *2 (Bankr. E.D. Mich. Aug. 9, 1995). There, provisional transfer was sought because "[a]lthough most or all of the [product] lawsuits had been removed to federal court, in many instances the plaintiffs had filed, or were expected to file, a motion for remand to state court." *Id.* Debtor sought provisional relief to preserve the status quo while the court considered the transfer motion on the merits. The magistrate judge agreed and submitted a report and recommendation to that effect that was adopted. *Id.* According to J&J, *Dow Corning* supports the argument that provisional transfer is appropriate under § 157(b)(5) to avoid inconsistent rulings and undue burden. (D.I. 13 at 6). It was the debtor in Dow Corning, however, who moved for transfer pursuant to § 157(b)(5) and who sought provisional transfer relief. *Dow Corning*, 1995

9

WL 495978, at *2. Additionally, the request in *Dow Corning* solely involved claims in which both the debtor and the non-debtors were named as defendants. *See id.* Moreover, while the court granted *ex parte* relief for claims against the debtor, it denied such relief for claims against third parties, setting the transfer motion for routine hearing in due course. *See id.*

Finally, J&J cites the *Garlock* and *Daimler-Chrysler* cases. In *Garlock*, the court noted that "[a] district court can enter a provisional transfer fixing venue before it and then conduct the necessary inquiries before entered a final transfer order. The provisional order brings all the pending suits before the transferee court 'for the time being.'" *In re Garlock, Inc.*, No. 02-1049, 2002 WL 1160157, at *2 (N.D. Ill. May 23, 2002). In *Daimler-Chrysler*, the court noted that "[a]lthough the language of § 157(b)(5) does not specifically provide for 'provisional' transfers, a number of courts have found provisional transfer under § 157(b)(5) to be appropriate." *In re Daimler-Chrysler Corp.*, No. 02-10029, 2002 WL 32378457, at *1 (5th Cir. Mar. 13, 2002) (citing *Dow Corning* and *A.H. Robins*). *Garlock* and *Daimler-Chrysler*, however, merely note that provisional transfer relief is permitted – not that it is required. And J&J does not explain how the cases support granting non-debtors similar relief here.

The Court agrees that the cases cited by J&J do not support provisional transfer as routine relief and do not support granting a non-debtors' request for wholesale provisional transfer of 2,400 cases regardless of their facts and circumstances. J&J's Emergency Provisional Transfer Motion makes no attempt to distinguish between the cases it identified for removal with respect to whether the Debtors were defendants or whether the allegations in the cases extend into the time period when J&J's Venue Motion claims the relevant relationship between J&J and the Debtor began. Rather, J&J seeks provisional transfer of essentially every talc case pending against it, irrespective of the facts. (*See* D.I. 32-1 (listing lawsuits identified by, and subject to, J&J's Venue

Motion)). Finally, the proposed provisional relief sought by J&J by virtue of the Emergency Provisional Transfer Motion is simply unworkable. For example, pursuant to the proposed order J&J has submitted, J&J seeks to impose on all 2,400 plaintiffs asserting talc claims an affirmative obligation to coordinate and file a single brief in response to the Venue Motion to be filed on or before May 13, 2019. (*See* D.I. 12-1 ¶ 5 (ii)).

### IV. CONCLUSION

J&J has failed to establish that provisional transfer is warranted in this case, and has not met the criteria for establishing that immediate or *ex parte* relief is appropriate. J&J's motions for Emergency Provision Transfer and for *Ex Parte* Relief are therefore denied. An appropriate order will follow.