# EXHIBIT 14

| | |
|---|---|
| CAROL KERKHOF, *et al.*, | |
| Plaintiffs, | Case No. 439392-V |
| v. | Judge: Jill R. Cummins |
| BRENNTAG NORTH AMERICA, INC., *et al.*, | |
| Defendants. | |

COMES NOW Defendants Johnson & Johnson Consumer, Inc. ("JJCI") and Johnson & Johnson (collectively, "Defendants"), and provide their Responses ("Responses") to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents stating as follows:

## **INTRODUCTORY STATEMENT**

Plaintiffs' action concerns alleged exposure to cosmetic talc products sold in the United States, namely Johnson's® Baby Powder and a claimed one-time use of Shower to Shower®[1] (collectively, "JBP/STS"). JBP/STS have been manufactured and sold at various periods of time by one or more of the Defendants and/or their predecessors, subsidiaries and affiliates (the "J&J Companies"). JJCI is currently the entity primarily responsible for the formulation, manufacture, testing, marketing and sale of Johnson's® Baby Powder. Johnson & Johnson is a holding company that does not design, manufacture, market or sell Johnson's® Baby Powder (or any other product).[2] Accordingly, the overwhelming majority of documents and information regarding JBP/STS are in the possession of JJCI.

---

[1] One or more of the J&J Companies (as defined herein) manufactured, marketed, and sold Shower to Shower® during the period from approximately 1960 to 2012. In 2012, Shower to Shower® was sold to Valeant Pharmaceuticals International, Inc. ("Valeant"), which currently manufactures, markets and sells the product.

[2] For this reason, Defendants object to Plaintiffs' collective allegations against JJCI and Johnson & Johnson on the grounds that they are factually and legally incorrect and improper. By making this response, Defendants do not concede that Johnson & Johnson is a proper defendant in this action.

Johnson's® Baby Powder has been sold for over a century and continues to be sold today. Shower to Shower® has been sold for more than half of a century, although it has not been manufactured or sold by any of the J&J Companies since 2012. Over the many decades that JBP/STS have been sold, different entities, departments, and employees — as well as third parties — have had responsibilities for various activities pertaining to these products, including, but not limited to activities relating to formulation, manufacture, testing, marketing and sale. Many of Plaintiffs' claims relate to such activities which took place in the mid to late 1900s and therefore many of the individuals who were involved in or had first-hand knowledge of such activities have died or are no longer employed by any of the J&J Companies.

In connection with personal injury actions against Defendants alleging exposure to JBP/STS (including actions alleging that such exposure caused ovarian cancer, mesothelioma, or other diseases), Defendants have conducted reasonable searches at various times over the course of many years to identify, collect and produce documents that relate in a reasonably direct manner to Plaintiffs' allegations concerning JBP/STS. Although Defendants' searches generally have been broad in scope, over the last several years, Defendants have expanded their searches to take into account, among other factors, the development of the claims and defenses in talc personal injury actions, discovery requests propounded on Defendants, and the overall increase in number and scope of talc personal injury actions against Defendants. In addition, in late 2017, Defendants re-visited sources from which documents were previously collected and made additional efforts to identify documents that may not have been identified in connection with earlier searches.[3] Responsive documents identified in connection with all of the foregoing search

---

[3] Because many of the documents collected in connection with the late 2017 search efforts were historic paper documents, reasonable methods of de-duplicating such documents against those previously produced are not available and, as a result, Defendants expect

efforts are being produced in this action, subject to the entry of a Protective Order in this action (the "Document Production").

Included within the scope of Defendants' Document Production are documents concerning the talc and talcum powder used in JBP/STS (talc mining and the fabrication and processing of talc powder, including sampling, testing and other quality control measures) as well as documents concerning the following activities and/or subject matters: research, formulation, specification, manufacture, quality control, labeling, sales, regulatory, adverse event reports, health and safety-related testing, and other consideration of health and safety issues reasonably related to JBP/STS. Also included in the Document Production are documents that may pertain to Johnson's® Baby Powder and Shower to Shower® sold outside the United States to the extent that they reasonably relate to testing regarding asbestos or ovarian cancer. Reasonable efforts also have been made to include in Defendants' Document Production documents produced by Defendants (including documents obtained from certain third parties) in all personal injury actions against Defendants involving JBP/STS.[4]

By referring Plaintiffs in certain of their Responses to the materials described above, Defendants are not stating, with respect to each and every Interrogatory or Request that they have or have had responsive information or documents, that they agree with the characterizations contained in the Interrogatory or Request, or that all documents that may contain information responsive to each and every Interrogatory or Request are included in the materials described

_____

that many documents added to the production in connection with the late 2017 search efforts are duplicative of documents previously produced.

[4] Defendants are making such documents available without waiver of their right to object to the authenticity and/or admissibility of such documents on any ground, including but not limited to, hearsay, lack of relevance and undue prejudice. To the extent that Defendants identify additional responsive documents in connection with this or other personal injury actions against Defendants involving exposure to JBP/STS, they will supplement their Document Production and make them available in this case.

above. Rather, by such reference, including descriptions of what documents Defendants have a reasonable and good faith belief would be included in the Document Production, Defendants are stating that, if they have documents with responsive information, they have taken reasonable steps to identify those documents and include them in the Document Production.

Defendants' Document Production is in a reasonably usable, fully searchable form and Plaintiffs can identify specific documents that may be responsive to particular Interrogatories or Requests based on their own interpretation of such Interrogatories or Requests. Nevertheless, in response to certain Interrogatories or Requests that are reasonably narrow in scope and specific, Defendants have identified in their Responses by way of example Bates numbers of documents that they have a reasonable and good faith belief are responsive to such Interrogatories or Requests, based on their interpretation of those Interrogatories or Requests. Such references are not intended to be a comprehensive listing of each and every document that may be responsive to an Interrogatory or Request.

Pursuant to Rule 2-402(e)(3), any production of documents or disclosure of information protected by any privilege, immunity, or doctrine, and/or any production of a confidential document or confidential information, is not intended as, and shall not be construed as, a waiver.

These Responses are made in a good faith effort to supply factual information and specify legal contentions that are presently known. Defendants reserve the right to supplement and/or amend their Responses based on information or documents discovered in connection with ongoing investigation, discovery and/or trial preparation in accordance with the Maryland Rules.

## **GENERAL OBJECTIONS**

Defendants generally object to Plaintiffs' Interrogatories and Requests, including but not limited to the Instructions and Definitions, to the extent that they seek to impose obligations

beyond those set forth in the Maryland Rules, Case Management Orders or other orders entered by this Court, or any other applicable law or rules. Further, Defendants generally object to the extent that Plaintiffs' Interrogatories or Requests seek information unrelated to JBP/STS. In addition, Defendants generally object to Plaintiffs' Interrogatories and Requests to the extent that they seek "all" information or documents regarding a particular subject matter (or similarly broad language) on the grounds that such Interrogatories (1) are vague and ambiguous, (2) are overly broad, (3) seek information and/or documents that are not relevant under Rule 2-402(a), (4) are unduly burdensome, and (5) seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or both, as well as any other privilege or protection recognized by law.

## SPECIFIC OBJECTIONS THAT APPLY TO MULTIPLE INTERROGATORIES OR REQUESTS

Several of Defendants' objections apply to more than one Interrogatory or Request. To avoid repetition of objections that may apply to several of the Interrogatories or Requests, those objections are set forth in the form of numbered paragraphs below. Where applicable, these objections are specifically incorporated by reference to paragraph number—e.g., "Specific Objection No. 2"—in Defendants' Responses to particular Interrogatories and Requests below.

1.      Privilege:  Defendants object to Plaintiffs' Interrogatories and Requests to the extent that they seek information and/or documents protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest doctrine, the self-critical analysis privilege, and/or any other privilege recognized by law.

2.      Confidential, commercially sensitive and proprietary information:  Defendants object to Plaintiffs' Interrogatories and Requests to the extent they seek information and/or documents that are confidential, commercially sensitive and proprietary, including but not

limited to information and/or documents relating to their products' design, testing, and manufacturing. Defendants state that they are not withholding documents based on this objection, but rather are producing such documents subject to the protective order entered in this action. In addition, Defendants may redact certain of the information described above from such documents and produce them in a redacted form.

3.     Personal Information:    Defendants object to Plaintiffs' Interrogatories and Requests to the extent they seek personal or private information and/or documents containing personal or private information about individuals other than Plaintiffs, including, but not limited to, home addresses and phone numbers of Defendants' current and former employees and identifying information (including but not limited to medical information) regarding other consumers of Defendants' products. This information is not relevant under Rule 2-402, privileged, private, and/or confidential, and Defendants are required by law to protect some or all of it from disclosure. Defendants state that they are not withholding documents containing personal information based on this objection, but rather are redacting personal information from documents and producing them in a redacted form.

4.     Unreasonable Scope: Defendants object to Plaintiffs' Interrogatories and Requests to the extent that they are unreasonable, overly broad, and unduly burdensome (including but not limited to insofar as they are completely unlimited as to time period or are not limited to a reasonable time period) on the grounds that such Interrogatories and Requests violate Rule 2-402.

Subject to the qualifications set forth in the Introductory Statement and without waiver of the objections stated above, Defendants respond to the individual Interrogatories and Requests as follows:

## <u>INTERROGATORIES</u>

<u>INTERROGATORY NO. 1:</u>    Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person. (Standard General Interrogatory No. 1.)

<u>ANSWER:</u>    Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they will identify fact witnesses that they intend to call to testify at trial at the time and to the extent required by the Maryland Rules and applicable scheduling orders. Defendants further state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information relating to the subject matter of this Interrogatory.

<u>INTERROGATORY NO. 2:</u>    Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and, with respect to an expert whose findings and opinions were acquired in anticipation of litigation or for trial, summarize the qualifications of the expert, state the terms of the expert's compensation, and attach to your answers any available list of publications written by the expert and any written report made by the expert concerning the expert's findings and opinions. (Standard General Interrogatory No. 2.)

<u>ANSWER:</u>    Defendants state that they will identify their testifying experts at the time and to the extent required by the Maryland Rules and applicable scheduling orders.

INTERROGATORY NO. 3: If you intend to rely upon any documents, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location, of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them. (Standard General Interrogatory No. 3.)

ANSWER: Defendants state that they will identify documents that they intend to use at trial at the time and to the extent required by the Maryland Rules and applicable scheduling orders.

INTERROGATORY NO. 4: If any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, identify that person, state the applicable policy limits of any insurance agreement under which the person might be liable, and describe any question or challenge raised by the person relating to coverage for this action. (Standard General Interrogatory No. 5.)

ANSWER: Defendants state that the policy underlying the disclosure of insurance information is implicated where such information would bear on the issue of a defendant's ability to satisfy a judgment. Defendants state that they have a reasonable and good faith belief that the above policy concern is unlikely to be implicated in this action.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that that it seeks information that is not relevant under Rule 2-402.

INTERROGATORY NO. 5:    State whether, at any time, you or any person on your behalf conducted any test, study, or other analysis concerning possible safety or health hazards of The Product [or of any substantially similar product] and, if so, describe the nature and results of each test, study, or analysis, state when it was performed, identify each person who performed it, and identify each document that refers to it. (Standard Product Liability Interrogatory No. 5.)

ANSWER:    Defendants state that one or more of the J&J Companies have conducted scientific research – and supported scientific research conducted by others – that pertains to the health and safety of talc and JBP/STS  The details of such research are described in documents included among the materials described in the Introductory Statement (including but not limited to  JNJ000538189,  JNJ000404913,  JNJ000016696,  JNJ000237881,  and  JNJ000238903 (beginning Bates numbers)), and in the publicly-available, published medical and scientific literature, which is equally available to Plaintiffs.

INTERROGATORY NO. 6:    State the date, place, and circumstances under which you first became aware that exposure to or use of The Product [or any substantially similar product] may be harmful or hazardous, identify each source of information leading to your awareness, and identify the harm or hazards of which you became aware. (Standard Product Liability Interrogatory No. 9.)

ANSWER:    Defendants expressly deny that cosmetic grade talc, including talc contained in JBP/STS, causes health hazards and therefore cannot identify a time frame to the extent that this Interrogatory suggests a causal relationship between JBP/STS and health hazards. Defendants refer Plaintiffs to the publicly-available, published medical and scientific literature for studies regarding talc and health and safety. In addition, Defendants state that they have a

reasonable and good faith belief that the materials described in the Introductory Statement include documents regarding studies and information supporting the safety of cosmetic talc, including but not limited to the following (beginning Bates numbers):

| JNJ000538189 | JNJ000404635 | JNJ000238903 |
| JNJ000020272 | JNJ000020278 | JNJ000020227 |

<u>INTERROGATORY NO. 7:</u>     Identify each person (other than your attorney or an expert retained in anticipation of litigation or preparation for trial who is not expected to be called as a witness at trial) who has made any written or oral report, memorandum, or statement to you or anyone acting on your behalf regarding the cause of the occurrence, and identify each document that constitutes or refers to each such report, memorandum, or statement. (Standard Product Liability Interrogatory No. 10.)

<u>ANSWER:</u>     Defendants state that they will produce any case-specific reports prepared by expert witnesses they expect to call as witnesses at trial at the time and to the extent required by the Maryland Rules and applicable scheduling orders. Further, to the extent this Interrogatory seeks information regarding JBP/STS, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information related to the subject matter of this Interrogatory.

<u>INTERROGATORY NO. 8:</u>     If at any time before the occurrence you or anyone on your behalf made any statement regarding the safety of The Product [or any substantially similar product]:

> (a)     state the date, time, place, and substance of each statement, the circumstances or occasion when the statement was made, and whether the statement was written or oral;

(b)     identify each person making the statement;

(c)     identify reach person to whom the statement was made; and,

(d)     identify each document that constitutes or refers to the statement.

(Standard Product Liability Interrogatory No. 36.)

ANSWER:     To the extent this Interrogatory seeks information regarding statements made regarding the safety of JBP/STS, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information related to the subject matter of this Interrogatory as it pertains to the safety of JBP/STS, including, but not limited to, the following (beginning Bates numbers):

| JNJ000538189 | JNJ000016696 | JNJ000238903 |
| JNJ000404913 | | |

INTERROGATORY NO. 9:     If you are aware of any lawsuit or other claim based upon an allegation that a defect in a component substantially similar to the component(s) at issue was a cause of any personal injury, death, or property damage, as to each:

(a)     state the date you became aware of the lawsuit or claim;

(b)     state the date and location of the incident involved in the lawsuit or claim and describe the [product(s)] and [component(s)] involved and the nature of the defect alleged;

(c)     identify the person bringing the lawsuit or claim; and

(d)     if a lawsuit, identify the court, case caption, and docket number.

(Standard Product Liability Interrogatory No. 39.)

ANSWER:     Defendants object on the basis that this Interrogatory seeks information that is publicly available. Subject to and without waiving this objection, as noted in the

Introductory Statement, there are a number of lawsuits pending across the country regarding JBP/STS raising various personal injury claims.

INTERROGATORY NO. 10:    Identify all persons who (a) were directly responsible for the design, testing, certification, or safety of the component(s) at issue, (b) are most knowledgeable about the design, testing, certification, or safety of the component(s) at issue, (c) manufactured the component(s) at issue, or (d) assembled the component(s) at issue into The Product. As to each person, state the area of that person's responsibility or knowledge (e.g., design, testing, certification, or safety). (Standard Product Liability Interrogatory No. 46.)

ANSWER:    Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding design, testing, certification, or safety of JBP/STS, including the identification of individuals who had involvement with respect to such activities.

INTERROGATORY NO. 11:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in Italy that was used in the manufacturing and/or production of J&J Baby Powder.

ANSWER:    For use in JBP, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Italian locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1946–1966 | Val Chisone, IT | Charles Mathieu |
| 1980 | Val Chisone, IT | Cyprus Minerals |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 12:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in Italy that was used in the manufacturing and/or production of Shower to Shower.

ANSWER:    For use in STS, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Italian locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1970–1973 | Val Chisone, IT | Charles Mathieu |
| 1980 | Val Chisone, IT | Cyprus Minerals |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 13:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in Vermont that was used in the manufacturing and/or production of J&J Baby Powder.

ANSWER:    For use in JBP, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Vermont locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1964–1966 | Hammondsville, VT | Eastern Magnesia Talc Company |
| 1966–1988 | Hammondsville | Windsor Minerals |

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1989–1990 | Hammondsville<br>Argonaut<br>Rainbow | Cyprus Minerals |
| 1990-1992 | Hammondsville<br>Argonaut<br>Rainbow<br>Hamm (Windham) | Cyprus Minerals |
| 1992–2000 | Hammondsville<br>Argonaut<br>Rainbow<br>Hamm (Windham) | Luzenac |
| 2000–2001 | Argonaut<br>Rainbow<br>Hamm (Windham) | Luzenac |
| 2001–2003 | Argonaut | Luzenac |
| 2010 | Argonaut | Rio Tinto (f/k/a Luzenac) |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 14:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in Vermont that was used in the manufacturing and/or production of Shower to Shower.

ANSWER:    For use in STS, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Vermont locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1967–1970,<br>1973-1988 | Hammondsville, VT | Windsor Minerals |

| DATE | MINE | SUPPLIER |
|---|---|---|
| 1989–1990 | Hammondsville<br>Argonaut<br>Rainbow | Cyprus Minerals |
| 1990–1992 | Hammondsville<br>Argonaut<br>Rainbow<br>Hamm (Windham) | Cyprus Minerals |
| 1992–2000 | Hammondsville<br>Argonaut<br>Rainbow<br>Hamm (Windham) | Luzenac |
| 2000–2001 | Argonaut<br>Rainbow<br>Hamm (Windham) | Luzenac |
| 2001–2003 | Argonaut | Luzenac |
| 2010 | Argonaut | Rio Tinto (f/k/a Luzenac) |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 15:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in China that was used in the manufacturing and/or production of J&J Baby Powder.

ANSWER:    For use in JBP, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Chinese locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 2003–2009 | Zhizhua quarry<br>Guping quarry<br>Huamei mine<br>Shang Lang quarry<br>Tongzi quarry | Luzenac |
| 2009–2010 | Zhizhua quarry | Rio Tinto (f/k/a Luzenac) |
| 2010–Present | Zhizhua quarry | Imerys (f/k/a Rio Tinto (f/k/a Luzenac)) |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 16:    Please identify the inclusive years, mine source(s), and supplier(s) of the talc and/or talc ore sourced in China that was used in the manufacturing and/or production of Shower to Shower.

ANSWER:    For use in STS, Defendants have a reasonable and good faith belief that cosmetic talc was sourced from the following Chinese locations during approximately the following periods:

| DATE | MINE | SUPPLIER |
|---|---|---|
| 2003–2009 | Zhizhua quarry<br>Guping quarry<br>Huamei mine<br>Shang Lang quarry<br>Tongzi quarry | Luzenac |
| 2009–2010 | Zhizhua quarry | Rio Tinto (f/k/a Luzenac) |
| 2010–2012 | Zhizhua quarry | Imerys (f/k/a Rio Tinto (f/k/a Luzenac)) |

In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information regarding talc sources for JBP.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 17:     Please describe with particularity when and all of the reasons why J&J switched its talc ore source from Italy to Vermont including the identity of all individuals involved in the decision(s) to switch mine sources.

ANSWER:     Defendants refer to and incorporate herein their Responses to Interrogatory Nos. 11-14. Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information relating to the subject matter of this Interrogatory.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous, and confusing to the extent it uses the phrase "the decision(s) to switch mine sources."

INTERROGATORY NO. 18:     Please describe with particularity when and all of the reasons why J&J switched its talc ore source from Vermont to China including the identity of all individuals involved in the decision(s) to switch mine sources.

ANSWER:     Defendants refer to and incorporate herein their Responses to Interrogatory Nos. 13-16. Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information relating to the subject matter of this Interrogatory.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous, and confusing to the extent it uses the phrase "the decision(s) to switch mine sources."

INTERROGATORY NO. 19:    Please identify all persons, including but not limited to consultants, J&J hired to analyze, for any reason, the talc J&J used in its talcum powder products as well as J&J finished talcum powder products, the purpose of the analysis, and the years in which the consultants were retained.

ANSWER:    Defendants state that one or more of the J&J Companies have retained consultants to evaluate issues regarding health and safety issues with respect to JBP/STS, including at various points in time the following: Alfred P. Wehner,  Biomedical and Environmental Consultants, Inc., Dr. Michael Huncharek, Dr. Joshua Muscat, Dr. Fred Pooley, University College, Cardiff, Wales, Bill Ashton, Colorado School of Mines Research Institute, Walter C. McCrone Associates, Inc., Chicago, IL, Dr. John Hopkins, Innova, and Prof. Gordon E. Brown, Princeton University. Defendants further state that they have a reasonable and good faith belief that the documents described in the Introductory Statement include documents containing information regarding the subject matter of this Interrogatory.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Interrogatory seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

INTERROGATORY NO. 20:    Identify and describe with particularity J&J's mesh grind specification for the Italian talc used in Baby Powder and Shower to Shower.

ANSWER:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents regarding the subject matter of this Interrogatory, including but not limited to documents containing information regarding formulas and specifications of JBP/STS, see, e.g., documents located under the custodian "APR."

To the extent that this Interrogatory seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

INTERROGATORY NO. 21:    Identify and describe with particularity J&J's mesh grind specification for the Vermont talc used in Baby Powder and Shower to Shower.

ANSWER:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents regarding the subject matter of this Interrogatory, including but not limited to documents containing information regarding formulas and specifications of JBP/STS, see, e.g., documents located under the custodian "APR."

To the extent that this Interrogatory seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

INTERROGATORY NO. 22:    Identify and describe with particularity J&J's mesh grind specification for the Chinese talc used in Baby Powder and Shower to Shower.

ANSWER:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents regarding the subject matter of this Interrogatory, including but not limited to

documents containing information regarding formulas and specifications of JBP/STS, see, e.g., documents located under the custodian "APR."

To the extent that this Interrogatory seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

INTERROGATORY NO. 23:    Identify and describe with particularity the talc particle size distribution for Baby Powder and Shower to Shower and any changes to the talc particle size distribution during the years 1959 through 2007.

ANSWER:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents regarding the subject matter of this Interrogatory, including but not limited to documents containing information regarding formulas and specifications of JBP/STS, see, e.g., documents located under the custodian "APR."

To the extent that this Interrogatory seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 24:    Identify and describe any and all involvement with, assistance to, contribution of information to, financial contributions and/or donations for, or other connection to the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

ANSWER:    Defendants state that they have a reasonable and good faith belief that they did not have involvement with the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 1 and 4.

INTERROGATORY NO. 25:    If you contend that the Plaintiff was exposed to asbestos in any manner that contributed to her development of malignant mesothelioma or any other health condition, identify each such exposure and describe it with particularity.

ANSWER:    Defendants state that JBP/STS have not contained and do not contain asbestos and deny that they are responsible for Plaintiffs' claimed injuries. Defendants further state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information about their contentions as they are formed. Further, Defendants refer Plaintiffs to the statements contained in their Complaint, any amended complaints, any written discovery responses, and the Affidavit of Ms. Carol Kerkhof.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 1 and 4, and on the additional grounds that it is premature.

INTERROGATORY NO. 26:    Identify and describe all factors J&J contends caused or contributed to Plaintiff's mesothelioma other than asbestos exposures described in response to Interrogatory No. 25.

ANSWER:    Defendants state that JBP/STS have not contained and do not contain asbestos and deny that they are responsible for Plaintiffs' claimed injuries. Defendants further state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information about their contentions as they are formed. Further, Defendants refer Plaintiffs to any reports, opinions, and

testimony of expert witnesses Defendants may call at trial, which they will produce in accordance with the Maryland Rules and applicable scheduling order.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 1 and 4, and on the additional grounds that it is premature.

INTERROGATORY NO. 27:    Identify and describe all incidents of asbestosis, talcosis, lung cancer, and mesothelioma, in J&J's current and past worker population, including but not limited to incidents that resulted in the filing of Workers' Compensation claims.

ANSWER:    Defendants object to this Interrogatory on the grounds stated in Specific Objection Nos. 1, 3, and 4, and on the additional grounds that this Interrogatory is vague, ambiguous and confusing as directed to Defendants. In addition, Defendants object to this Interrogatory as irrelevant, because Plaintiff was never in its employ.

INTERROGATORY NO. 28:    Identify and describe all testing, analysis, examination, screening, and/or air monitoring J&J conducted, requested, and/or participated in, regarding the presence of asbestos in any talc or talc-containing product(s) it manufactured, sold, retailed and/or distributed at any time.

ANSWER:    Defendants state that various entities have performed testing for asbestos and other contaminants on JBP/STS and talc used in JBP/STS and other talc-containing products during the periods in which those products have been sold. Defendants state that one or more of the J&J Companies have performed such testing, including at an internal testing laboratory at a facility in Royston, Georgia. In addition, numerous third parties have been involved in testing JBP/STS and/or talc supplied for use in JBP/STS and/or other talc-containing products. Such

third parties include contract manufacturers, suppliers, and laboratories (independent, university, and governmental), including but not limited to the following[5]:

PTI Royston, LLC/Pharma Tech Industries
Imerys Talc America
Charles Mathieu
Cyprus Minerals
Windsor Minerals
Luzenac America
Rio Tinto
AMA Analytical
Forensic Analytical
McCrone Associates
EMV Associates
ES Laboratories
R.J. Lee Group
Battelle Memorial Institute
Colorado School of Mines
University College, Cardiff U.K.
Carnegie Mellon
Massachusetts Institute of Technology
Princeton University
Harvard University School of Public Health
United States Food & Drug Administration (FDA)
United States Geological Survey (USGS)
National Institute of Occupational Health & Safety (NIOSH)
Illinois Environmental Protection Agency

Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement, including but not limited to the following (beginning Bates numbers):

| | | |
|---|---|---|
| JNJ000384469 | JNJ000280775 | JNJ000239636 |
| JNJ000383016 | JNJ000382986 | JNJ000423308 |
| JNJ000383087 | JNJ000347608 | JNJ000223427 |
| JNJ000375817 | JNJ000521581 | JNJ000241173 |
| JNJ000866688 | | |

---

[5] The listed entities did not necessarily provide testing for JBP/STS as that term is defined in the Introductory Statement.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection No. 4.

INTERROGATORY NO. 29:    Identify and describe all industrial hygiene measures (e.g., wet down methods, respiratory protective equipment, education and training, showers, laundry service, etc.) taken at J&J manufacturing, processing, packaging, warehousing, and/or distribution facilities for talc and/or talcum powder products at any time, including when and why.

ANSWER:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents regarding the subject matter of this Interrogatory.

To the extent that this Interrogatory seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, particularly to the extent this Interrogatory seeks information regarding premises that Plaintiffs do not allege are at issues in this litigation.

INTERROGATORY NO. 30:    Identify and describe all medical monitoring programs of J&J employees, if any, J&J implemented at any time, including when and why.

ANSWER:    Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents containing information relating to the subject matter of this Interrogatory.

To the extent that this Interrogatory seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1, 3 and 4. In addition, Defendants object to this Interrogatory as irrelevant, because Plaintiff was never in its employ.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST FOR PRODUCTION NO. 1.    All documents identified in response to Plaintiff Carol Kerkhof's Interrogatories to you.

RESPONSE:  Defendants refer Plaintiffs to their Responses to Plaintiffs' Interrogatories and the documents identified therein, as well as the materials described in the Introductory Statement.

To the extent that this Requests seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 2.    All formula cards, documents, files, and/or materials identifying the specific chemical formula for the fragrance used for Johnson's Baby Powder for every year from initial production through 2007.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request as it pertains to JBP, including documents containing information regarding formulas and specifications of JBP, see, e.g., documents located under the custodian "APR."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 3.    All formula cards, documents, files, and/or materials identifying the specific chemical formula for the fragrance used for Johnson & Johnson Shower to Shower for every year from initial production through 2007.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request as it pertains to STS, including

documents containing information regarding formulas and specifications of STS, see, e.g., documents located under the custodian "APR."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 4.    All samples and/or exemplars of all talc types/grades Johnson & Johnson received and/or purchased from:

    a.     Eastern Magnesia Talc;
    b.     Englehard Minerals;
    c.     Windsor Minerals;
    d.     Whittaker, Clark & Daniels, Inc.;
    e.     Charles Mathieu;
    f.     Donald Ferry;
    g.     Metropolitan Talc Co.;
    h.     Cyprus Industrial Minerals;
    i.     Cyprus Mines Company;
    j.     Cyprus Amax;
    k.     Imerys Talc;
    l.     Rio Tinto;
    m.     Luzenac;
    n.     Pfizer, Inc.;
    o.     Peter Bixby;
    p.     CTFA;
    q.     PCPC.

RESPONSE:  Defendants have received multiple requests for production of various talc-related materials across multiple venues. In connection with those requests, Defendants have made reasonable efforts to identify such materials and compiled inventories of such materials. Without conceding that any of the materials were retained for purposes of testing or are otherwise suitable for testing, Defendants refer Plaintiffs to such inventories, which will be provided to Plaintiffs. In addition, an order has been entered in *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, MDL No. 16-2738 ("New Jersey MDL"), governing the handling  and division of the foregoing samples. Defendants will comply with that order, a copy of which is attached hereto.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 5.    All samples and/or exemplars of all talc types/grades Johnson & Johnson received and/or purchased from:

a.    Italy;
b.    North Carolina;
c.    Alabama;
d.    Montana;
e.    China;
f.    Vermont;
g.    France;
h.    California.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 6.    All samples and/or exemplars of talcum powder products, including but not limited to Baby Powder and Shower-to-Shower, distributed, sold, and/or retailed in the United States for the following decades:

a.    1920s;
b.    1930s;
c.    1940s;
d.    1950s;
e.    1960s;
f.    1970s;
g.    1980s;
h.    1990s;
i.    2000s;

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 7.    All documents obtained by Johnson & Johnson (including but not limited to present and former counsel for Johnson & Johnson) through FOIA requests at any time in the last 10 years regarding:

        a.     talc;
        b.     talcum powder;
        c.     baby powder;
        d.     Valeant Pharmaceuticals;
        e.     Shower-to-Shower;
        f.     asbestos;
        g.     ovarian cancer;
        h.     Johnson & Johnson;
        i.     Imerys;
        j.     Rio Tinto;
        k.     Luzenac;
        l.     Whittaker, Clark & Daniels, Inc.;
        m.     Windsor Minerals;
        n.     Eastern Magnesia Talc;
        o.     Engelhard Minerals;
        p.     EMTAL;
        q.     Professor Lewin;
        r.     McCrone;
        s.     Mt. Sinai;
        t.     Cyprus;
        u.     Charles Mathieu;
        v.     R.T. Vanderbilt;
        w.     Johns-Manville;
        x.     CTFA;
        y.     PCPC;
        z.     testing and/or analysis of talc for asbestos.

RESPONSE:    Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 8.    All    correspondence,    communications, memorandums, conference reports, and other documents between J&J and:

        a.     Whittaker, Clark & Daniels, Inc.;
        b.     Mineral Pigment Solutions, Inc.;

c.    Clark Minerals;
d.    Brenntag North America;
e.    Brenntag Specialties;
f.    Cyprus Amax Minerals Co;
g.    Cyprus Industrial Minerals;
h.    Cyprus Minerals Co;
i.    Cyprus Mines Co;
j.    Metropolitan Talc Co;
k.    Charles Mathieu;
l.    Windsor Minerals;
m.    Eastern Magnesia Talc;
n.    Engelhard Minerals;
o.    Vermont Talc Co.;
p.    Imerys Talc;
q.    Luzenac Talc;
r.    Rio Tinto;
s.    Johns-Manville Co;
t.    Colgate-Palmolive Co;
u.    Pfizer, Inc.;
v.    Valeant Pharmaceutical;
w.    Charles B. Chrystal Co.;
x.    R.T. Vanderbilt;
y.    Gouverneur Talc Co.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 9.    All    correspondence,    communications, memorandums, conference reports, and other documents regarding:

a.    Talc
b.    talcum powder
c.    testing and/or analysis of talc and/or talcum powder
d.    Asbestos
e.    corn starch
f.    baby powder
g.    CTFA
h.    PCPC
i.    FDA

      j.        OSHA
      k.        NIOSH
      l.        EPA
      m.      MSHA
      n.       Whittaker, Clark & Daniels, Inc.
      o.       Cyprus
      p.       Windsor Minerals
      q.       Imerys
      r.       Luzenac
      s.       Rio Tinto
      t.       Charles Mathieu
      u.      McCrone & Associates
      v.       x-ray diffraction or XRD
      w.      light microscopy
      x.       electron microscopy and/or TEM.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 10.</u>   All samples and/or exemplars of Johnson's Baby Powder products provided to and/or collected by:

      a.      Arthur Langer, PhD;
      b.      Robert Nolan, PhD;
      c.      Mt. Sinai;
      d.      Alan Segrave, P.G.;
      e.      Bureau Veritas;
      f.      Andreas Saldivar;
      g.      AMA Analytical;
      h.      Matthew Sanchez, PhD;
      i.      Drew Van Orden;
      j.      Richard Lee, PhD;
      k.      RJ Lee Group;
      l.      Ian Stewart;
      m.      McCrone & Associates;
      n.      Mark Floyd;
      o.      Forensic Analytical;
      p.      Lee Poye;
      q.      J3;

r.	Mickey Gunter, PhD;
s.	University of Idaho;
t.	Fred Pooley, PhD;
u.	University of Cardiff;
v.	Turin Polytechnic;
w.	Colorado School of Mines;
x.	Jerome Krause;
y.	Battelle Memorial Institute;
z.	Johns-Manville;
aa.	CTFA;
bb.	FDA.

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

<u>REQUEST FOR PRODUCTION NO. 11.</u>    All samples and/or exemplars of Johnson & Johnson Shower to Shower products provided to and/or collected by:

a.	Arthur Langer, PhD;
b.	Robert Nolan, PhD;
c.	Mt. Sinai;
d.	Alan Segrave, P.G.;
e.	Bureau Veritas;
f.	Andreas Saldivar;
g.	AMA Analytical;
h.	Matthew Sanchez, PhD;
i.	Drew Van Orden;
j.	Richard Lee, PhD;
k.	RJ Lee Group;
l.	Ian Stewart;
m.	McCrone & Associates;
n.	Mark Floyd;
o.	Forensic Analytical;
p.	Lee Poye;
q.	J3;
r.	Mickey Gunter, PhD;
s.	University of Idaho;

|     |                                |
|-----|--------------------------------|
| t.  | Fred Pooley, PhD;              |
| u.  | University of Cardiff;         |
| v.  | Turin Polytechnic;             |
| w.  | Colorado School of Mines;      |
| x.  | Jerome Krause;                 |
| y.  | Battelle Memorial Institute;   |
| z.  | Johns-Manville;                |
| aa. | CTFA;                          |
| bb. | FDA.                           |

RESPONSE:   Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 12.     All samples and/or exemplars of Italian talc provided to and/or collected by:

|     |                          |
|-----|--------------------------|
| a.  | Arthur Langer, PhD;      |
| b.  | Robert Nolan, PhD;       |
| c.  | Mt. Sinai;               |
| d.  | Alan Segrave, P.G.;      |
| e.  | Bureau Veritas;          |
| f.  | Andreas Saldivar;        |
| g.  | AMA Analytical;          |
| h.  | Matthew Sanchez, PhD;    |
| i.  | Drew Van Orden;          |
| j.  | Richard Lee, PhD;        |
| k.  | RJ Lee Group;            |
| l.  | Ian Stewart;             |
| m.  | McCrone & Associates;    |
| n.  | Mark Floyd;              |
| o.  | Forensic Analytical;     |
| p.  | Lee Poye;                |
| q.  | J3;                      |
| r.  | Mickey Gunter, PhD;      |
| s.  | University of Idaho;     |
| t.  | Fred Pooley, PhD;        |
| u.  | University of Cardiff;   |

| | |
|---|---|
| v. | Turin Polytechnic; |
| w. | Colorado School of Mines; |
| x. | Jerome Krause; |
| y. | Battelle Memorial Institute; |
| z. | Johns-Manville; |
| aa. | CTFA; |
| bb. | FDA. |

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

<u>REQUEST FOR PRODUCTION NO. 13.</u>  All samples and/or exemplars of Vermont talc provided to and/or collected by:

| | |
|---|---|
| a. | Arthur Langer, PhD; |
| b. | Robert Nolan, PhD; |
| c. | Mt. Sinai; |
| d. | Alan Segrave, P.G.; |
| e. | Bureau Veritas; |
| f. | Andreas Saldivar; |
| g. | AMA Analytical; |
| h. | Matthew Sanchez, PhD; |
| i. | Drew Van Orden; |
| j. | Richard Lee, PhD; |
| k. | RJ Lee Group; |
| l. | Ian Stewart; |
| m. | McCrone & Associates; |
| n. | Mark Floyd; |
| o. | Forensic Analytical; |
| p. | Lee Poye; |
| q. | J3; |
| r. | Mickey Gunter, PhD; |
| s. | University of Idaho; |
| t. | Fred Pooley, PhD; |
| u. | University of Cardiff; |
| v. | Turin Polytechnic; |
| w. | Colorado School of Mines; |

x.      Jerome Krause;
y.      Battelle Memorial Institute;
z.      Johns-Manville;
aa.    CTFA;
bb.    FDA.

RESPONSE: Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 14.    All samples and/or exemplars of Chinese talc provided to and/or collected by:

a.      Arthur Langer, PhD;
b.      Robert Nolan, PhD;
c.      Mt. Sinai;
d.      Alan Segrave, P.G.;
e.      Bureau Veritas;
f.      Andreas Saldivar;
g.      AMA Analytical;
h.      Matthew Sanchez, PhD;
i.      Drew Van Orden;
j.      Richard Lee, PhD;
k.      RJ Lee Group;
l.      Ian Stewart;
m.    McCrone & Associates;
n.      Mark Floyd;
o.      Forensic Analytical;
p.      Lee Poye;
q.      J3;
r.      Mickey Gunter, PhD;
s.      University of Idaho;
t.      Fred Pooley, PhD;
u.      University of Cardiff;
v.      Turin Polytechnic;
w.      Colorado School of Mines;
x.      Jerome Krause;
y.      Battelle Memorial Institute;

      z.      Johns-Manville;
      aa.    CTFA;
      bb.    FDA.

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

<u>REQUEST FOR PRODUCTION NO. 15.</u>  All samples and/or exemplars of Chinese talc considered and/or relied upon by Matthew Sanchez, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Chinese talc used by Johnson & Johnson.

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

<u>REQUEST FOR PRODUCTION NO. 16.</u>  All samples and/or exemplars of Italian talc considered and/or relied upon by Matthew Sanchez, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Italian talc used by Johnson & Johnson.

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 17.   All samples and/or exemplars of Vermont talc considered and/or relied upon by Matthew Sanchez, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Vermont talc used by Johnson & Johnson.

RESPONSE:   Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 18.   All samples and/or exemplars of Chinese talc considered and/or relied upon by Mickey Gunter, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Chinese talc used by Johnson & Johnson.

RESPONSE:   Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks

information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 19.    All samples and/or exemplars of Italian talc considered and/or relied upon by Mickey Gunter, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Italian talc used by Johnson & Johnson.

RESPONSE:   Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 20.    All samples and/or exemplars of Vermont talc considered and/or relied upon by Mickey Gunter, PhD, Johnson & Johnson's disclosed expert, in forming his opinions and conclusions regarding asbestos content in Vermont talc used by Johnson & Johnson.

RESPONSE:   Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 21.    All documents produced by any party in the St. Louis talc litigation to which you were a party or of which you have come into possession, including but not limited to, the following cases:

    a.    Giannecchini v. Johnson & Johnson 22nd. Circuit Court, St. Louis, Missouri;
    b.    Hogans v. Johnson & Johnson, 1422-CC09012-01, Circuit Court, St. Louis City, Missouri (St. Louis);
    c.    Fox v. Johnson & Johnson, Cause No. 1422-CC09012-01, Division 10, Missouri Circuit Court, 22nd Judicial District (St. Louis).
    d.    Lois Slemp v. Johnson & Johnson et al., case number 1422-CC09326-01, in the 22nd Judicial Circuit Court of Missouri.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2, 3, and 4.

REQUEST FOR PRODUCTION NO. 22.    All articles of incorporation and all amendments thereto for J&J.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the corporate/business history of the Defendants as it relates to JBP/STS.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 23.    All correspondence in any form and of any type between J&J and any other company, person or entity regarding:

    a.    talc carcinogenicity,
    b.    asbestos contamination of talc,
    c.    measurement techniques for contamination of talc including but not limited to asbestos contamination,

      d.       analysis techniques for contamination of talc including but not limited to asbestos contamination, or

      e.       how asbestos contamination in consumer products should be characterized.

<u>RESPONSE:</u>  Defendants state that JBP/STS have not contained and do not contain asbestos. Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

<u>REQUEST FOR PRODUCTION NO. 24.</u>  All correspondence, communications, memorandums, conference reports, submissions, exchanges, and other documents between you and any government regulatory agencies, including but not limited to FDA, EPA, NIOSH, OSHA, NJDEP, MSHA.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| | | |
|---|---|---|
| JNJ000566827 | JNJ000567588 | JNJ000867875 |
| JNJ000868370 | JNJ000244995 | JNJ000025266 |
| JNJ000250618 | JNJ000000112 | JNJ000000043 |
| JNJ000004313 | JNJ000092018 | JNJ000405133 |
| JNJ000405302 | JNJ000447352 | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 25.</u>  All correspondence, communications, memorandums, conference reports, submissions, exchanges, and other documents between you and any industrial, professional, and/or trade organizations/associations, including but not limited to PCPC, CTFA, AIHA, and the National Safety Council.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000092018 | JNJ000092073 | JNJ000405234 |
| JNJ000405302 | JNJ000405464 | JNJ000368256 |
| JNJ000368262 | JNJ000368455 | JNJ000368539 |
| JNJ000368592 | JNJ000368673 | JNJ000368703 |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 26.</u>  All correspondence, including but not limited to email correspondence, regarding regulation of talc in the United States to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 27.  All correspondence, including but not limited to email correspondence, regarding regulation of talc in China to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 28.  All correspondence, including but not limited to email correspondence, regarding regulation of talc in Europe to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 29.  All correspondence, including but not limited to email correspondence, regarding regulation of talc in Canada to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which

Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 30. All correspondence, including but not limited to email correspondence, regarding analysis of talc for the presence of asbestos to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 31. All correspondence, including but not limited to email correspondence, regarding analysis of talc for the releasabilty of asbestos to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous and confusing.

<u>REQUEST FOR PRODUCTION NO. 32.</u>  All correspondence, including but not limited to email correspondence, regarding testing of talc for the presence of asbestos to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 33.</u>  All correspondence, including but not limited to email correspondence, regarding testing methods for the presence of asbestos in talcum powder to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 34.</u>  All correspondence, including but not limited to email correspondence, regarding detection of asbestos to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 35.</u>  All correspondence, including but not limited to email correspondence, regarding polarized light microscopy to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 36.    All correspondence, including but not limited to email correspondence, regarding scanning electron microscopy to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 37.    All correspondence, including but not limited to email correspondence, regarding transmission electron microscopy to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 38.    All correspondence, including but not limited to email correspondence, regarding infrared spectroscopy to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 39.    All correspondence, including but not limited to email correspondence, regarding x-ray diffraction to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 40.    All correspondence, including but not limited to email correspondence, regarding the United States Pharmacopeia a/k/a USP method to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE</u>:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 41.</u>  All correspondence, including but not limited to email correspondence, regarding the USP modernization panel to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE</u>:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

<u>REQUEST FOR PRODUCTION NO. 42.</u>  All correspondence, including but not limited to email correspondence, regarding the Colorado School of Mines to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

<u>RESPONSE</u>:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 43.   All correspondence, including but not limited to email correspondence, regarding Johnson's Baby Powder to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 44.   All correspondence, including but not limited to email correspondence, regarding Johnson & Johnson to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 45.   All correspondence, including but not limited to email correspondence, regarding consumer protection of the safety of talc to which

Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 46. All correspondence, including but not limited to email correspondence, regarding injury, illness, and/or diseases related to or alleged to be related to talc to which Julie Pier was a party or recipient – which would include all correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE: Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 47. All correspondence, including but not limited to email correspondence, regarding injury, illness, and/or diseases related to or alleged to be related to asbestos to which Julie Pier was a party or recipient – which would include all

correspondence to or from Julie Pier and/or to which Julie Pier was a "cc" or a "bcc" recipient or which Julie Pier otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 48. All correspondence, including but not limited to email correspondence, regarding regulation of talc in the United States to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 49. All correspondence, including but not limited to email correspondence, regarding regulation of talc in China to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 50.  All correspondence, including but not limited to email correspondence, regarding regulation of talc in Europe to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 51.  All correspondence, including but not limited to email correspondence, regarding regulation of talc in Canada to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 52.  All correspondence, including but not limited to email correspondence, regarding analysis of talc for the presence of asbestos to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 53.  All correspondence, including but not limited to email correspondence, regarding analysis of talc for the releasabilty of asbestos to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 54.   All correspondence, including but not limited to email correspondence, regarding testing of talc for the presence of asbestos to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 55.   All correspondence, including but not limited to email correspondence, regarding testing methods for the presence of asbestos in talcum powder to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 56.   All correspondence, including but not limited to email correspondence, regarding detection of asbestos to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to

which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 57.  All correspondence, including but not limited to email correspondence, regarding polarized light microscopy to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 58.  All correspondence, including but not limited to email correspondence, regarding scanning electron microscopy to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 59.  All correspondence, including but not limited to email correspondence, regarding transmission electron microscopy to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 60.  All correspondence, including but not limited to email correspondence, regarding infrared spectroscopy to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 61. All correspondence, including but not limited to email correspondence, regarding x-ray diffraction to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 62. All correspondence, including but not limited to email correspondence, regarding the United States Pharmacopeia a/k/a USP method to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 63.    All correspondence, including but not limited to email correspondence, regarding the USP modernization panel to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 64.    All correspondence, including but not limited to email correspondence, regarding the Colorado School of Mines to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 65.    All correspondence, including but not limited to email correspondence, regarding Johnson's Baby Powder to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma

and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 66. All correspondence, including but not limited to email correspondence, regarding Johnson & Johnson to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 67. All correspondence, including but not limited to email correspondence, regarding consumer protection of the safety of talc to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 68. All correspondence, including but not limited to email correspondence, regarding injury, illness, and/or diseases related to or alleged to be related to talc to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 69. All correspondence, including but not limited to email correspondence, regarding injury, illness, and/or diseases related to or alleged to be related to asbestos to which Shripal Sharma was a party or recipient – which would include all correspondence to or from Shripal Sharma and/or to which Shripal Sharma was a "cc" or a "bcc" recipient or which Shripal Sharma otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 70. All correspondence, including but not limited to email correspondence, regarding regulation of talc in the United States to which R.J. Zazenski was a party or recipient – which would include all correspondence to or from R.J. Zazenski and/or to which R.J. Zazenski was a "cc" or a "bcc" recipient or which R.J. Zazenski otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 71. All correspondence, including but not limited to email correspondence, regarding regulation of talc in China to which R.J. Zazenski was a party or recipient – which would include all correspondence to or from R.J. Zazenski and/or to which R.J. Zazenski was a "cc" or a "bcc" recipient or which R.J. Zazenski otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 72.    All correspondence, including but not limited to email correspondence, regarding regulation of talc in Europe to which R.J. Zazenski was a party or recipient – which would include all correspondence to or from R.J. Zazenski and/or to which R.J. Zazenski was a "cc" or a "bcc" recipient or which R.J. Zazenski otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 73.    All correspondence, including but not limited to email correspondence, regarding regulation of talc in Canada to which R.J. Zazenski was a party or recipient – which would include all correspondence to or from R.J. Zazenski and/or to which R.J. Zazenski was a "cc" or a "bcc" recipient or which R.J. Zazenski otherwise received or sent in any manner.

RESPONSE:    Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 74. All correspondence, including but not limited to email correspondence, regarding analysis of talc for the presence of asbestos to which R.J. Zazenski was a party or recipient – which would include all correspondence to or from R.J. Zazenski and/or to which R.J. Zazenski was a "cc" or a "bcc" recipient or which R.J. Zazenski otherwise received or sent in any manner.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 75. All depositions, interrogatories, statements, certifications, and/or affidavits that will be used to prove J&J's cross claims or third party claims in this case.

RESPONSE: Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response and produce responsive documents, if applicable, at the appropriate time and as additional information becomes available.

To the extent that this Request seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature.

REQUEST FOR PRODUCTION NO. 76. All depositions, interrogatories, statements, certifications, and/or affidavits that will be used to prove J&J's allegations, if any, regarding

alleged exposure of the Plaintiff to asbestos for which any bankrupt entities are claimed to be responsible.

RESPONSE: Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response and produce responsive documents, if applicable, at the appropriate time and as additional information becomes available.

To the extent that this Request seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature.

REQUEST FOR PRODUCTION NO. 77.    All depositions, interrogatories, statements, certifications, and/or affidavits that will be used to prove J&J's allegations, if any, against entities that have not been named as Defendants in the above captioned lawsuit.

RESPONSE: Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response and produce responsive documents, if applicable, at the appropriate time and as additional information becomes available.

To the extent that this Request seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature.

REQUEST FOR PRODUCTION NO. 78.    All depositions, interrogatories, statements, certifications, and/or affidavits that will be used to prove J&J claim of exposure and/or causation from a product/premise for which J&J is not responsible, if any, against any party/entity not named in the above captioned lawsuit.

<u>RESPONSE:</u> Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response and produce responsive documents, if applicable, at the appropriate time and as additional information becomes available.

To the extent that this Request seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature, vague and confusing.

<u>REQUEST FOR PRODUCTION NO. 79.</u>   All depositions, interrogatories, statements, certifications, and/or affidavits that will be used to prove Johnson & Johnson's claim of exposure and/or causation from a product/premise for which Johnson & Johnson is not responsible, if any, against any party/entity not named in the above captioned lawsuit.

<u>RESPONSE:</u>  Defendants refer to and incorporate herein their Response to Request No. 78.

To the extent that this Request seeks additional or different information, Defendants object on the grounds stated in Specific Objection Nos. 1, 3, and 4, and on the additional grounds that it is premature and duplicative.

<u>REQUEST FOR PRODUCTION NO. 80.</u>   All documents – including but not limited to correspondence, reports, files, memorandums, invoices, shipping records – related to all talc types/grades used in the manufacture, processing, and/or development of talcum powder products, including but not limited to Baby Powder and Shower to Shower.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 81.    All documents – including but not limited to correspondence, reports, files, memorandums, invoices, shipping records – related to all perfumes and fragrance products/ingredients used in the manufacture, processing, and/or development of talcum powder products, including but not limited to Baby Powder and Shower to Shower.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 82.    All documents – including but not limited to reports, data, and transcripts – related to any submissions made, or testimony given, to any government regulatory agency – including but not limited to FDA, EPA, OSHA, NIOSH, MSHA – regarding talc mined, milled, processed, supplied, sold, delivered, and/or distributed by J&J.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 83.    All documents evidencing your current net worth.

RESPONSE:  Defendant refers Plaintiff to publicly-available 10-K and 10-Q filings, which may be located, among other locations, at http://www.investor.jnj.com/sec.cfm.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 84.  All documents related to J&J's sales, distribution, marketing, production, and other business activities in Maryland at any time between 1959 and the present.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 85.  All documents related to Johnson & Johnson's market share regarding talcum powder product sales in the United States for each year beginning with the first year Johnson & Johnson sold talcum powder products in the United States continuing through 2007.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 86.  All documents, correspondence, communications, records, results, and other information J&J received from J&J's talc suppliers

regarding the alleged asbestos-free nature of the talc supplied to J&J upon which J&J claims it relied.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the talc supplied for use in and formulation of JBP/STS, including but not limited to the following (beginning Bates numbers):

| | | |
|---|---|---|
| JNJ000383087 | JNJ000347608 | JNJ000223427 |
| JNJ000375817 | JNJ000521581 | JNJ000241173 |
| JNJ000866688 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 87.    All documents, files or materials concerning all incidents of asbestosis, talcosis, lung cancer, and mesothelioma suffered by - or claimed to be suffered by – J&J's current and former employees.

RESPONSE:  Defendants state that JBP/STS have not contained and do not contain asbestos.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 3, and 4. Defendants further object to the extent this Request seeks information and/or documents irrelevant to the subject matter of this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR PRODUCTION NO. 88.    All documents, files or materials concerning Johnson & Johnson's attempts to comply with FDA, EPA, OSHA, MSHA, NIOSH or other governmental (federal and state) standards at Johnson & Johnson's manufacturing, development, storage, warehouse, processing, testing, and research facilities.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1, 2 and 4. Defendants further object to the extent this Request seeks information and/or documents irrelevant to the subject matter of this lawsuit and, therefore, is not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR PRODUCTION NO. 89. All documents, files or materials related to the relationship between Valeant Pharmaceutical and J&J, Inc. including but not limited to merger agreements, asset purchases, buy-outs, take-overs, credit exchanges, successorship, and consolidation of entities/staff/executives/organizations.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 4.

REQUEST FOR PRODUCTION NO. 90. All documents, files or materials related to the relationship between Windsor Minerals and J&J, Inc. including but not limited to merger agreements, asset purchases, buy-outs, take-overs, credit exchanges, successorship, supply agreements, corporate structure, and consolidation of entities/staff/executives/organizations.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 4.

REQUEST FOR PRODUCTION NO. 91.    All documents, files or materials relating to J&J's first knowledge, notice or awareness about the alleged adverse effects of exposure to asbestos and/or asbestos-containing products.

RESPONSE:  Defendants refer Plaintiffs to the publicly-available, published medical and scientific literature for studies regarding asbestos and health and safety. Defendants have a reasonable and good faith belief that such literature contains thousands of articles regarding asbestos and asbestos-related disease dating back more than 100 years. In addition, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 92.    All documents, files or materials relating to J&J's first knowledge, notice or awareness about the potential inclusion and/or contamination of talc with asbestos.

RESPONSE:  Without conceding any characterizations contained in this Request, Defendants state that extensive testing to confirm that JBP/STS have not contained and do not contain asbestos or other contaminants has been and continues to be performed, including by third parties such as contract manufacturers, talc suppliers, and independent, university, and governmental laboratories. Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement, including but not limited to the following (beginning Bates numbers):

| JNJ000384469 | JNJ000280775 | JNJ000239636 |
| JNJ000383016 | JNJ000382986 | JNJ000423308 |

| JNJ000383087 | JNJ000347608 | JNJ000223427 |
|---|---|---|
| JNJ000375817 | JNJ000521581 | JNJ000241173 |
| JNJ000866688 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 93.    All documents, files or materials relating to J&J's first knowledge, notice or awareness about the alleged adverse effects of exposure to talc and/or talc-containing products.

RESPONSE: Defendants expressly deny that cosmetic grade talc, including talc contained in JBP/STS, causes health hazards and therefore cannot identify a time frame to the extent that this Request suggests a causal relationship between JBP/STS and health hazards. Defendants refer Plaintiffs to the publicly-available, published medical and scientific literature for studies regarding talc and health and safety. In addition, Defendants state that they have a reasonable and good faith belief that the materials described in the Introductory Statement include documents regarding studies and information supporting the safety of cosmetic talc, including but not limited to the following (beginning Bates numbers):

| JNJ000538189 | JNJ000404635 | JNJ000238903 |
|---|---|---|
| JNJ000020272 | JNJ000020278 | JNJ000020227 |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 94.    All documents, files or materials relating to Johnson & Johnson's first knowledge, notice or awareness about the alleged adverse effects of exposure to asbestos and/or asbestos-containing products.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 91.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is duplicative.

REQUEST FOR PRODUCTION NO. 95.   All documents, files or materials relating to Johnson & Johnson's first knowledge, notice or awareness about the alleged adverse effects of exposure to talc and/or talc-containing products.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 93.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is duplicative.

REQUEST FOR PRODUCTION NO. 96.   All documents, files or materials relating to the availability of materials/ingredients as substitutes and/or replacements for talc in J&J talcum powder products.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000874737 | JNJ000874740 | JNJ000874755 |
|---|---|---|
| JNJ000874763 | JNJ000874767 | JNJ000874784 |
| JNJ000874799 | JNJ000866815 | JNJ000866826 |
| JNJ000867914 | JNJTALC000021412 | JNJTALC000021463 |
| JNJTALC000021474 | JNJTALC000021476 | JNJTALC000021477 |
| JNJTALC000021517 | JNJTALC000021552 | JNJTALC000021553 |
| JNJTALC000021565 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous and confusing as to the terms "substitutes and/or replacements."

REQUEST FOR PRODUCTION NO. 97.    All documents, files or materials relating to the availability, feasibility, and/or use of corn starch in talcum powder products.

RESPONSE:   Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| | | |
|---|---|---|
| JNJ000874737 | JNJ000874740 | JNJ000874755 |
| JNJ000874763 | JNJ000874767 | JNJ000874784 |
| JNJ000874799 | JNJ000866815 | JNJ000866826 |
| JNJ000867914 | JNJTALC000021412 | JNJTALC000021463 |
| JNJTALC000021474 | JNJTALC000021476 | JNJTALC000021477 |
| JNJTALC000021517 | JNJTALC000021552 | JNJTALC000021553 |
| JNJTALC000021565 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 98.    All documents, files or materials relating to warnings and/or cautions Johnson & Johnson provided to its employees, customers, and/or consumers regarding the potential health hazards of asbestos.

RESPONSE:   Defendants state that JBP/STS have not contained and do not contain asbestos, therefore no warning or caution involving asbestos has ever been given to purchasers of the product or directed to the users of the product. Defendants further state that the J&J

Companies do not and have not manufactured or sold any products containing asbestos. Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks an additional or different response, Defendants object on the grounds stated in Specific Objection No. 4, particularly to the extent this Request seeks information regarding premises that Plaintiffs do not allege are at issues in this litigation. Defendants further object to this Request to the extent it seeks information regarding exposure to cosmetic talc in an employment setting as opposed to the consumer usage at issue in this litigation.

REQUEST FOR PRODUCTION NO. 99.    All documents, files or materials relating to warnings and/or cautions Johnson & Johnson received from any and all sources regarding the potential health hazards of asbestos.

RESPONSE:  Defendants refer Plaintiffs to the publicly-available, published medical and scientific literature for studies regarding asbestos and health and safety. Defendants have a reasonable and good faith belief that such literature contains thousands of articles regarding asbestos and asbestos-related disease dating back more than 100 years. In addition, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks an additional or different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 100.  All documents, files or materials relating to warnings and/or cautions Johnson & Johnson provided to its employees, customers, and/or consumers regarding the potential health hazards of talc.

RESPONSE:  Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000405231 | JNJ000356310 | JNJ000405580 |
| JNJ000426147 | JNJ000362624 | JNJ000870344 |
| JNJ000874367 | JNJ000874377 | JNJTALC000022912 |
| JNJ000424856 | | |

To the extent that this Request seeks an additional or different response, Defendants object on the grounds stated in Specific Objection No. 4, particularly to the extent this Request seeks information regarding premises that Plaintiffs do not allege are at issues in this litigation. Defendants further object to this Request to the extent it seeks information regarding exposure to cosmetic talc in an employment setting as opposed to the consumer usage at issue in this litigation.

REQUEST FOR PRODUCTION NO. 101.  All documents, files or materials relating to warnings and/or cautions Johnson & Johnson received from any and all sources regarding the potential health hazards of talc.

RESPONSE:  Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which

Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks an additional or different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 102.  All documents, files or materials relating to air monitoring and/or sampling conducted at J&J facilities where talcum powder products were manufactured, produced, developed, and/or tested.

RESPONSE:  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000244995 | JNJ000025266 | JNJ000250618 |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 103.  All filters, cartridges, grids, and other materials from all testing, analysis, and/or investigation for asbestos in talcum powder products sold, distributed, supplied, and/or retailed between 1928 and 2017.

RESPONSE:  Defendants state that extensive testing to confirm that JBP/STS have not contained and do not contain asbestos or other contaminants has been and continues to be performed, including by third parties such as contract manufacturers, talc suppliers, and independent, university, and governmental laboratories. Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4. Defendants further object to this Request to the extent that it seeks tangible things ("filters, cartridges, grids, and other MATERIALS") on the grounds that it is vague and ambiguous, is overly broad, and is unduly burdensome.

REQUEST FOR PRODUCTION NO. 104. All filters, cartridges, grids, and other materials from all testing, analysis, and/or investigation for asbestos in the talc and/or talc ore used in the manufacture and/or processing of talcum powder products between 1928 and 2017.

RESPONSE: Defendants state that extensive testing to confirm that JBP/STS have not contained and do not contain asbestos or other contaminants has been and continues to be performed, including by third parties such as contract manufacturers, talc suppliers, and independent, university, and governmental laboratories. Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4. Defendants further object to this Request to the extent that it seeks tangible things ("filters, cartridges, grids, and other MATERIALS") on the grounds that it is vague and ambiguous, is overly broad, and is unduly burdensome.

REQUEST FOR PRODUCTION NO. 105. All filters, cartridges, grids, and other materials from all testing, analysis, and/or investigation for asbestos content and/or asbestos releasability of talc and/or talcum powder used in the manufacture, processing, and/or development of talcum powder products, including but not limited to Baby Powder and Shower to shower.

<u>RESPONSE:</u>  Defendants state that JBP/STS have not contained and do not contain asbestos. Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to studies and testing performed on JBP, including with respect to asbestos, including but not limited to the following (beginning Bates numbers):

| | | |
|---|---|---|
| JNJ000061563 | JNJ000061567 | JNJ000133381 |
| JNJ000245548 | JNJ000294620 | JNJ000358049 |
| JNJ000866706 | JNJ000876200 | JNJ000237313 |
| JNJ000061385 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4, and on the additional grounds that it is vague, ambiguous, and confusing to the extent it uses the term "releasability." Defendants further object to this Request to the extent that it seeks tangible things ("filters, cartridges, grids, and other materials") on the grounds that it is vague and ambiguous, is overly broad, and is unduly burdensome.

<u>REQUEST FOR PRODUCTION NO. 106.</u>  All laboratory notebooks and other documents, files or materials relating to any testing and/or analysis of talc-containing and/or talcum powder products for asbestos content and/or releasability.

<u>RESPONSE:</u>  Defendants state that JBP/STS have not contained and do not contain asbestos. Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000347608 | JNJ000223427 | JNJ000375817 |
|---|---|---|
| JNJ000521581 | JNJ000241173 | JNJ000866688 |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous, and confusing.

REQUEST FOR PRODUCTION NO. 107. All maps, diagrams, photographs, images, renderings, drawings, depictions, slides, and/or other visuals relating to the mines and mills from which the talc and/or talcum powder used in the manufacture, processing, and/or development of Johnson & Johnson talcum powder products, including but not limited to Baby Powder and Shower to Shower, was derived.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000089996 | JNJ000090013 | JNJ000245002 |
|---|---|---|
| JNJ000302448 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 108. All Material Safety Data Sheets for all ingredients obtained, purchased, and/or received for use in talcum powder products between 1928 and 2017.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include examples of

material safety data sheets that have accompanied talc supplied for use in JBP/STS, including but not limited to the following: Luzenac MSDS (JNJ 000415599 – 5602); Luzenac MSDS (JNJ 000879845 – 9853); and Imerys MSDS (JNJ 000558581 – 8587).

To the extent that this Request seeks an additional different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 109. All minutes, membership logs, digests, magazines, and printed materials received from all industrial, professional, and/or trade associations/organizations Johnson & Johnson was a member of including but not limited to PCPC, CTFA, AIHA, National Safety Council.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 110. All photographs or other images of all talc and/or talc-containing products identified in response to any of these discovery demands, including any photographs or other images of the packaging of any of the materials/products. Said photographs or images should include photographs or images of the products and/or packaging depicted in any catalogues or advertisements, in print, electronic, or other form.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, including but not limited to the following (beginning Bates numbers):

| JNJ000874824 | JNJ000874851 | JNJ000874950 |
|---|---|---|
| JNJ000874827 | JNJ000874842 | JNJ000874854 |
| JNJTALC000136806 | JNJTALC000136812 | JNJTALC000136794 |
| JNJTALC000136786 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 111. All records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for asbestos in talcum powder products between 1928 and 2017.

RESPONSE: Without conceding any characterizations contained in this Request, Defendants state that extensive testing to confirm that JBP/STS and the talc used in JBP/STS and other talc-containing products have not contained and do not contain asbestos or other contaminants has been and continues to be performed, including by third parties such as contract manufacturers, talc suppliers, and independent, university, and governmental laboratories. Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement, including but not limited to the following (beginning Bates numbers):

| JNJ000384469 | JNJ000280775 | JNJ000239636 |
|---|---|---|
| JNJ000383016 | JNJ000382986 | JNJ000423308 |
| JNJ000383087 | JNJ000347608 | JNJ000223427 |
| JNJ000375817 | JNJ000521581 | JNJ000241173 |
| JNJ000866688 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 112. All records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for asbestos in talc and/or talc ore used in the manufacture and/or processing of talcum powder products between 1928 and 2017.

RESPONSE: Defendants refer to and incorporate herein its Response to Request No. 111.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 113. All records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for releasability of asbestos in talcum powder products between 1928 and 2017.

RESPONSE: Defendants state that JBP/STS have not contained and do not contain asbestos. Without conceding any characterizations contained in this Request, Defendants refer Plaintiffs to the materials described in the Introductory Statement, which they has a reasonable and good faith belief include non-privileged documents related to studies and testing performed on JBP/STS, including with respect to asbestos, including but not limited to the following (beginning Bates numbers):

| JNJ000061563 | JNJ000061567 | JNJ000133381 |
| JNJ000245548 | JNJ000294620 | JNJ000358049 |
| JNJ000866706 | JNJ000876200 | JNJ000237313 |
| JNJ000061385 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague, ambiguous, and confusing to the extent it uses the term "releasability."

REQUEST FOR PRODUCTION NO. 114. All records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for asbestos of talc used in the manufacture, processing, and/or development of talcum powder products, including but not limited to Baby Powder and Shower to shower.

RESPONSE: Without conceding any characterizations contained in this Request, Defendants state that extensive testing to confirm that JBP/STS and the talc used in JBP/STS and other talc-containing products have not contained and do not contain asbestos or other contaminants has been and continues to be performed, including by third parties such as contract manufacturers, talc suppliers, and independent, university, and governmental laboratories. Defendants further state that they have a reasonable and good faith belief that documents concerning such testing are among the materials described in the Introductory Statement, including but not limited to the following (beginning Bates numbers):

| JNJ000384469 | JNJ000280775 | JNJ000239636 |
|---|---|---|
| JNJ000383016 | JNJ000382986 | JNJ000423308 |
| JNJ000383087 | JNJ000347608 | JNJ000223427 |
| JNJ000375817 | JNJ000521581 | JNJ000241173 |
| JNJ000866688 | | |

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 115. All records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis of

talcum powder products, including but not limited to Baby Powder and Shower to shower, for asbestos.

RESPONSE:  Defendants refer to and incorporate herein its Response to Request No. 114.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 116.  All samples and/or exemplars of Johnson's Baby Powder talcum powder products.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 117.  All samples and/or exemplars of Shower to Shower talcum powder products.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 118.  All samples and/or exemplars of talc, talc ore, and/or talcum powder used in the manufacture, processing, and/or development of talcum powder products, including but not limited to Baby Powder and Shower to shower, for sale, distribution, and/or retail in the United States.

RESPONSE:  Defendants refer to and incorporate herein their Response to Request No. 4.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 4.

REQUEST FOR PRODUCTION NO. 119.  Any and all documents and intangible things including but not limited to agreements and correspondence between you and an insurance archivist and/or any other individual or entity retained by you for the purpose of uncovering any insurance agreement(s) which may be liable to satisfy part or all of a judgment which may be entered in an action, claim submitted, demand made or settlement agreement entered into, or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE:  Defendant states that the policy underlying the disclosure of insurance documents is implicated where such documents would bear on the issue of a defendant's ability to satisfy a judgment. Defendant states that it has a reasonable and good faith belief that the above policy concern is unlikely to be implicated in this action.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that that it seeks documents that are not relevant under Rule 2-402.

REQUEST FOR PRODUCTION NO. 120.  Any and all documents and tangible things establishing that someone other than a person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE:  Discovery and investigation are ongoing. Defendants reserve the right to supplement this response and produce responsive documents, if any are available or exist, at the appropriate time and as additional information becomes available.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that that it seeks documents that are not relevant under Rule 2-402.

REQUEST FOR PRODUCTION NO. 121.  Any and all documents and tangible things that refer or relate to the findings of findings any such insurance archivist and/or any other individual or entity retained by you for the purpose of uncovering any insurance agreement(s), including, but not limited to, the existence of any insurance agreements.

RESPONSE:  Defendant states that the policy underlying the disclosure of insurance documents is implicated where such documents would bear on the issue of a defendant's ability to satisfy a judgment. Defendant states that it has a reasonable and good faith belief that the above policy concern is unlikely to be implicated in this action.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that that it seeks documents that are not relevant under Rule 2-402.

REQUEST FOR PRODUCTION NO. 122.  Please produce the videotape identified in document JNJNL61_000006382-3 in defendant's document production in Verdolotti v. Brenntag North America, Inc., et al. in Middlesex County, New Jersey.

RESPONSE:  Defendants state they will produce the above-referenced video.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 2 and 3, and on the additional grounds that this

Request is overly broad, is unduly burdensome, and exceeds the scope of permissible discovery under the Maryland Court Rules.

REQUEST FOR PRODUCTION NO. 123. Produce all items identified as retained by defendant in JNJNL61_000015761.

RESPONSE: Defendants are presently conducting a diligent search and reasonable inquiry for the requested items and will supplement this response if and when additional information regarding the requested items become available.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 124. Produce all records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for the items discarded by DEFENDANT as described in JNJNL61_000015761.

RESPONSE: Defendants are presently conducting a diligent search and reasonable inquiry for the requested items and will supplement this response if and when additional information regarding the requested items become available.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 125. Produce all records, results, analysis, correspondence, summaries, data, bench sheets, XRD curves, photomicrographs, SAED patterns, reports, charts, files or materials, and other documents relating to the testing and/or analysis for the items identified as retained by defendant in JNJNL61_000015761.

RESPONSE: Defendants are presently conducting a diligent search and reasonable inquiry for the requested items and will supplement this response if and when additional information regarding the requested items become available.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 4.

REQUEST FOR PRODUCTION NO. 126. The "monopoly board" created by or in conjunction with Imerys regarding talc litigation.

RESPONSE: Defendants object on the grounds stated in Specific Objection No. 4, and on the additional grounds that it is vague and ambiguous, including, but not limited to, the term "monopoly board."

REQUEST FOR PRODUCTION NO. 127. The complete employment file for:

      a.     William Ashton;
      b.     Gavin Hildick-Smith;
      c.     W. Nashed, Ph.D.;
      d.     John Hopkins, Ph.D.;
      e.     Louis Edley;
      f.     Alex Yuhas;
      g.     F. Robert Rolle.

RESPONSE: Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 3, and on the additional grounds that this Request is overly broad, is unduly burdensome, and exceeds the scope of permissible discovery under the Maryland Court Rules.

REQUEST FOR PRODUCTION NO. 128. The complete case file for Westfall v. Whittaker, Clark & Daniels.

RESPONSE: Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 3, and on the additional grounds that this Request is overly broad, is unduly burdensome, and exceeds the scope of permissible discovery under the Maryland Court Rules.

REQUEST FOR PRODUCTION NO. 129. The complete case file for Louis Edley, Docket L-075913-86.

RESPONSE: Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 3, and on the additional grounds that this Request is overly broad, is unduly burdensome, and exceeds the scope of permissible discovery under the Maryland Court Rules.

REQUEST FOR PRODUCTION NO. 130. The complete case file for Alex Yuhas, Docket L-029706-84.

RESPONSE: Defendants object on the grounds stated in Specific Objection Nos. 1, 2 and 3, and on the additional grounds that this Request is overly broad, is unduly burdensome, and exceeds the scope of permissible discovery under the Maryland Court Rules.

REQUEST FOR PRODUCTION NO. 131. All correspondence, communications, electronic mail, facsimile, and other writings between you and Edward B. Ilgren.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 132. All correspondence, communications, electronic mail, facsimile, and other writings between your lawyers and Edward B. Ilgren.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 133. All correspondence, communications, electronic mail, facsimile, and other writings between your experts and Edward B. Ilgren.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 134. All documents, files, and materials related to financial contribution and/or payments made to Edward B. Ilgren.

RESPONSE: Defendants have not identified "documents, files, and materials related to financial contribution and/or payments made to Edward B. Ilgren."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 135. All correspondence, communications, electronic mail, facsimile, and other writings between you and Carlo Sartorio.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, if any exist.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 136. All correspondence, communications, electronic mail, facsimile, and other writings between your lawyers and Carlo Sartorio.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 137. All correspondence, communications, electronic mail, facsimile, and other writings between your experts and Carlo Sartorio.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 138. All documents, files, and materials related to financial contribution and/or payments made to Carlo Sartorio.

RESPONSE: Defendants have not identified "documents, files, and materials related to financial contribution and/or payments made to Carlo Sartorio."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 139. All correspondence, communications, electronic mail, facsimile, and other writings between you and John A. Hoskins.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 140. All correspondence, communications, electronic mail, facsimile, and other writings between your lawyers and John A. Hoskins.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 141. All correspondence, communications, electronic mail, facsimile, and other writings between your experts and John A. Hoskins.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 142. All documents, files, and materials related to financial contribution and/or payments made to John A. Hoskins.

RESPONSE: Defendants have not identified "documents, files, and materials related to financial contribution and/or payments made to John A. Hoskins."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 143. All correspondence, communications, electronic mail, facsimile, and other writings between you and Eric Chatfield.

RESPONSE: Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 144. All correspondence, communications, electronic mail, facsimile, and other writings between your lawyers and Eric Chatfield.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 145. All correspondence, communications, electronic mail, facsimile, and other writings between your experts and Eric Chatfield.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 (including to the extent that this Request seeks information regarding Defendants' consulting experts for this or other litigation or prematurely seeks the disclosure of Defendants' testifying experts in this litigation) and 4.

REQUEST FOR PRODUCTION NO. 146. All documents, files, and materials related to financial contribution and/or payments made to Eric Chatfield.

RESPONSE: Defendants have not identified "documents, files, and materials related to financial contribution and/or payments made to Eric Chatfield."

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4.

REQUEST FOR PRODUCTION NO. 147. All documents, files, and materials related to funding for Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

RESPONSE: Defendants did not have involvement with the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 1 and 4.

REQUEST FOR PRODUCTION NO. 148. All documents, files, and materials related to financial contribution for Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

RESPONSE: Defendants did not have involvement with the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 1 and 4.

REQUEST FOR PRODUCTION NO. 149. All manuscripts, drafts, versions, edits, and revisions of Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

RESPONSE: Defendants did not have involvement with the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 1 and 4.

REQUEST FOR PRODUCTION NO. 150. All documents, files, and materials related to Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

RESPONSE: Defendants did not have involvement with the publication Ilgren, et al., Analysis of an Authentic Historical Italian Cosmetic Talc Sample - Further Evidence for the Lack of Cancer Risk, Environment and Pollution; Vol. 6, No. 2 (2017).

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection No. 1 and 4.

REQUEST FOR PRODUCTION NO. 151. All documents, files, and materials related to financial contribution to Canadian Center of Science and Education.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, if any exist.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 2, and 4.

<u>REQUEST FOR PRODUCTION NO. 152.</u>  All documents, files, and materials related to financial contribution to University of Tarapaca, Chile.

<u>RESPONSE:</u>  Defendants refer Plaintiffs to the materials described in the Introductory Statement, which Defendants have a reasonable and good faith belief include non-privileged documents related to the subject matter of this Request, if any exist.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 2, and 4.

<u>REQUEST FOR PRODUCTION NO. 153.</u>  All documents that support your contention Plaintiff does not suffer from mesothelioma.

<u>RESPONSE:</u>  Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information about its contentions and produce responsive documents, if any are available or exist, at the appropriate time and as additional information becomes available. Defendants refer Plaintiffs to materials exchanged in discovery for any written statements by Plaintiffs concerning the allegations.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature.

REQUEST FOR PRODUCTION NO. 154. All documents that will be used to assert a claim of exposure and/or causation from a product/premise for which Imerys is not responsible, if any, against any party/entity not named in the above captioned lawsuit.

RESPONSE: Defendants object to this Request on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature.

REQUEST FOR PRODUCTION NO. 155. All documents to support your contention – if any – that Plaintiff's mesothelioma was caused by exposure to asbestos from something other than a Johnson & Johnson talcum powder product.

RESPONSE: Defendants state that JBP/STS have not contained and do not contain asbestos and deny that they are responsible for Plaintiffs' claimed injuries. Without conceding any characterizations contained in this Request, Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information about its contentions and produce responsive documents, if any are available or exist, at the appropriate time and as additional information becomes available. Defendants refer Plaintiffs to materials exchanged in discovery for any written statements by Plaintiffs concerning the allegations.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1 and 4, and on the additional grounds that it is premature and calls for expert opinion.

REQUEST FOR PRODUCTION NO. 156. All documents to support your contention Plaintiff's mesothelioma was caused by anything other than exposure to asbestos.

RESPONSE: Defendants state that JBP/STS have not contained and do not contain asbestos and deny that they are responsible for Plaintiffs' claimed injuries. Without conceding

any characterizations contained in this Request, Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information about its contentions and produce responsive documents, if any are available or exist, at the appropriate time and as additional information becomes available. Defendants refer Plaintiffs to materials exchanged in discovery for any written statements by Plaintiffs concerning the allegations.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, and 4, and on the additional grounds that it is premature and calls for expert opinion.

REQUEST FOR PRODUCTION NO. 157.  All documents, files or materials regarding Plaintiff's household members' employers, work places, and employment information.

RESPONSE: Defendants state that their investigation in this matter, including discovery, is ongoing and continuing. Defendants state that they may supplement this Response with additional information and produce responsive documents, if any are available or exist, at the appropriate time and as additional information becomes available. Defendants refer Plaintiffs to materials exchanged in discovery for any written statements by Plaintiffs concerning their allegations.

To the extent that this Request seeks a different response, Defendants object on the grounds stated in Specific Objection Nos. 1, 3, and 4, and on the additional grounds that it is vague, ambiguous, and premature, and to the extent it seeks documents that are not within the possession, custody or control of Defendants or could be more easily obtained from a different entity.

Respectfully submitted,

Robin Silver
Michael L. Haslup
Joshua F. Kahn
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 727-6464
rsilver@milesstockbridge.com
mhaslup@MilesStockbridge.com
jkahn@milestockbridge.com

***Attorneys for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.***